UNITED STATES of America,
Plaintiff–Appellee,

v.

Wendell B. RIGSBY, Defendant–
Appellant.

Nos. 90–6127, 90–6128.

United States Court of Appeals,
Sixth Circuit.

Argued March 21, 1991.

Decided Sept. 4, 1991.

John W. Gill, Jr., U.S. Atty., Michael Winck, Asst. U.S. Atty. (argued and briefed), Knoxville, Tenn., for plaintiff-appellee.

Howell Clements (argued and briefed), Chattanooga, Tenn., for defendant-appellant.

Before KEITH and MARTIN, Circuit Judges, and CONTIE, Senior Circuit Judge.

KEITH, Circuit Judge.

Defendant, Wendell Brett Rigsby ("defendant"), appeals his conviction and sentence for: (1) manufacturing 1,000 or more marijuana plants, (2) using and carrying three firearms in relation to a drug trafficking offense, and (3) possessing an unregistered firearm shorter than 18 inches long. For the reasons stated below, we AFFIRM.

## I. INTRODUCTION

### A. The Facts

On July 17, 1989, law enforcement authorities with the Tennessee Governor's Task Force on Marijuana Eradication ob-

served nine separate patches of marijuana by aerial surveillance in Van Buren County, Tennessee. The patches were located in a mountainous, wooded area from which the authorities proceeded to eradicate the marijuana. Lieutenant Mike Dover ("Lt. Dover") of the Tennessee Highway Patrol, who piloted the helicopter, located each of the nine marijuana patches and directed a ground crew of agents to each of the nine patches by radio. The agents established a landing zone adjacent to a dirt road. The road led into the mountainous area where the marijuana patches were located and accessed a paved public road. In order to reach the marijuana patches, agents proceeded from the landing zone on the dirt road to a picnic campsite area that had been cleared on property owned by defendant's parents. From the picnic campsite area, wooded trails led to seven of the nine patches. The opening to the wooded trail adjacent to the picnic site was blocked by a barricade of underbrush, fence posts and wire. The remaining two patches were reached by following a logging road past the landing zone to a point approximately 100 to 200 yards away from patch eight.

The agents drove a four-wheel drive vehicle over a small embankment adjacent to the blockage at the picnic site to reach the wooded trails on the other side. The agents proceeded to eradicate the marijuana from the nine patches. Some of the eradicated plants had to be airlifted out of the woods because of the large number of plants and the rough terrain.

While the helicopter was airlifting some of the marijuana from patch six, agents heard the sound of a gunshot. The agents took cover, thinking someone was shooting at them. A search of the area disclosed a booby-trapped twelve-gauge shotgun rigged by a camouflaged green trip wire which stretched across the trail and attached to the trigger of the shotgun. Inspection of the shotgun revealed that it had just been fired. This shotgun was found at the end of patch six.

Shortly after the booby-trapped gun had fired, the agent who was eradicating patch eight heard a noise between patches eight and nine, which sounded like something hollow being dropped on the ground. He also heard what sounded like someone running through the woods. The agent relayed this information to the other agents via radio.

A short while later, the agents observed defendant leaving the wooded area and passing through the landing zone area en route to the paved road. He was driving a four-wheel drive vehicle which contained two chain saws. As defendant was leaving the landing zone area in the four-wheel drive vehicle, Sheriff Donny Evans ("Sheriff Evans") stopped defendant. Defendant advised Sheriff Evans that he was picking up some chain saws that he had been using to cut trees. Sheriff Evans instructed defendant to leave the area and not return. Shortly thereafter, defendant was observed driving from the paved road back into the wooded section at a high rate of speed with a rifle strapped on his shoulder.

An agent who was stationed at the landing zone radioed Lt. Dover in the helicopter and related his observations of defendant returning to the wooded area in his vehicle with a rifle strapped to his shoulder. Lt. Dover observed from the helicopter a man sitting in a four-wheel drive vehicle at the intersection of trails in the woods slinging a rifle over his shoulder and leaving the wooded area in the direction of the landing zone. Lt. Dover directed the agent at the landing zone to stop defendant until he landed the helicopter. Agent Andy Woodall ("Agent Woodall") stopped defendant and seized the rifle which was slung across defendant's shoulder. The rifle, which was identified as an AR–15, held a clip containing 29 rounds of .223–caliber ammunition, and the defendant had in his pocket a separate clip containing 20 rounds of .223–caliber ammunition. Lt. Dover landed the helicopter in the landing zone, approached defendant and advised him that he was being arrested for carrying a weapon. He then advised defendant of his *Miranda* rights.

Agent Tom Gothard ("Agent Gothard"), who had been working in patch six where the booby-trapped shotgun had been set off, went to the picnic site to determine if

there was anyone present posing a danger to the agents searching the patches. He had received the earlier radio messages that someone had been heard running through the woods and that defendant had been observed in the area with the rifle strapped to his shoulder. There was a tent in the campsite area. Agent Gothard pulled back the unzipped tent flap and observed the sawed off shotgun that is the subject of counts two and three in the present case. Near the tent he observed and seized a military ammunition box containing .223–caliber rounds of ammunition, cleaning materials for the AR–15 rifle and marijuana which was drying in an open box.

Defendant was taken to the Van Buren County Jail and again read his *Miranda* rights. Defendant signed a form indicating that he understood his rights. Agents Gothard and Woodall interviewed defendant. When asked by the agents, defendant stated that he would feel more comfortable with his mother present, and she was allowed to participate in the interview. Defendant at first denied any knowledge of the sawed-off shotgun or any of the marijuana. Agent Gothard then advised defendant that he did not believe that defendant was telling the truth. Agent Gothard stated that he had been trained in eye accessing, a technique by which he could watch persons' reactions with their eyes to determine whether they were telling the truth. Defendant then indicated that the marijuana that had been found in a box at the campsite was his and that he also owned the sawed-off shotgun.

During the interview, Agent Gothard had written down the questions asked and the answers given. At the conclusion of the interview, he gave the notes to defendant and his mother to review. After reviewing the notes, both defendant and his mother signed the notes.

### B. Procedural History

On March 13, 1990, a federal grand jury returned a three-count indictment. Count one charged defendant with manufacturing 1,000 or more marijuana plants during the spring and summer of 1989, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). Count two charged defendant with using and carrying three separate firearms during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Count three charged defendant with knowingly possessing the Savage 12–gauge sawed-off semi-automatic shotgun with a barrel length shorter than eighteen inches, which was not registered to defendant in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d), 5871.

Prior to trial, defendant filed motions to suppress the evidence seized by the government and the confession of defendant. The district court held a hearing on defendant's motions to suppress on May 22, 1990. At the conclusion of the suppression hearing, the district court denied defendant's motions to suppress and entered an order to that effect on May 25, 1990.

Defendant's jury trial commenced on May 29, 1990. During the trial, defendant's cellmate, Tom Christian ("Christian"), testified against him. Christian stated that defendant told him how he had grown the marijuana, how tall it had grown and the market value of the marijuana. Christian also testified that defendant had stated that he had strung up a shotgun booby-trap. Prior to trial, Christian had written letters to the United States Attorney's office indicating that he had information that might be helpful to the prosecutor in defendant's case. Defendant attempted to impeach Christian's testimony at trial by using two of the letters in which Christian offered to cooperate with the prosecution and the reasons for his cooperation. These letters were introduced into evidence by the prosecution over defendant's objection.

On May 31, 1990, the jury returned a verdict of guilty on each of the three counts charged against the defendant. On August 9, 1990, the district court sentenced defendant to a term of incarceration of 151 months on count 1 and 120 months on count three, to run concurrently, and a term of 60 months on count two, to run consecutive to counts one and three, for a total of 211 months. The district court also

sentenced defendant to supervised release for a period of five years on count one and three years on each of counts two and three, all to run concurrently. Defendant was not fined, but did receive a special assessment of $50 on each count.

Defendant, through his attorney, filed a timely notice of appeal on August 13, 1990. Defendant also filed a pro se notice of appeal. He alleges several errors on appeal. Defendant avers that the district court erred by: (1) denying his motion to suppress evidence at trial on May 25, 1990; (2) denying his motion for acquittal and for a new trial on June 20, 1990; and (3) failing to advise the jury of the different penalties applicable for manufacturing different quantities of marijuana, and making a judicial determination, under the preponderance of the evidence standard, of the quantity of marijuana that defendant was guilty of manufacturing. Defendant also argues that there was insufficient evidence to support the jury verdict.

## II. DISCUSSION

### A. District Court's Admission of Evidence

#### 1. *Defendant's Incriminating Statements*

█ Defendant argues that although he was twice given his *Miranda* rights before making his statements to the police, his waiver of his rights was not "voluntarily, knowingly, and intelligently" made as mandated by the Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Therefore, according to defendant, the district court erred in admitting statements that he made to law enforcement officers while in custody at the Van Buren County jail. We find no merit in this argument.

█ The government argues that our standard of review of defendant's claim is clearly erroneous. The government characterizes defendant's claim as raising an evidentiary issue. However, where a confession is alleged to have been involuntary because of some element of police coercion, the defendant's due process rights under the fourteenth amendment are implicated.

*See Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 521, 93 L.Ed.2d 473 (1986); *United States v. Newman,* 889 F.2d 88, 95 (6th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 2566, 109 L.Ed.2d 748 (1990). The admissibility of a confession is governed by evidentiary rules only if there is no allegation of police coercion. *Connelly,* 479 U.S. at 159, 107 S.Ct. at 518.

Defendant alleges that he was "mentally coerced" into confessing. Defendant implies that the alleged coercion was partly attributable to the fact that he was in custody at the time he made the statements. He also alleges that at the time of arrest, while he was in handcuffs, the police threatened that defendant's head would be "busted in" if he turned around. Defendant further argues that he could not comprehend the import of his statements or the waiver of his rights. Based on these statements, we conclude that defendant alleges a violation of his due process rights. Our review of his claim is, therefore, de novo.

█ In determining the voluntariness of a confession, we must examine "the totality of the circumstances surrounding the confession, both the characteristics of the accused and the details of the interrogation, and determine[ ] their psychological impact on an accused's ability to resist pressures to confess." *United States v. Brown,* 557 F.2d 541, 546 (6th Cir.1977). To support a determination that a confession was coerced, the evidence must establish that: (1) the police activity was objectively coercive; (2) the coercion in question was sufficient to overbear defendant's will; and (3) defendant's will was, in fact, overborne as a result of the coercive police activity. *McCall v. Dutton,* 863 F.2d 454, 459 (6th Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1744, 104 L.Ed.2d 181 (1989).

Defendant has not presented evidence sufficient to satisfy these elements. Although defendant was in a custodial environment at the time of his statements, we do not believe that the environment was oppressive or coercive. Defendant was clearly advised of his *Miranda* rights. At the agents' suggestion, defendant's mother

joined him in the interview. Both defendant and his mother reviewed and signed the notes which had been transcribed during the interview. While defendant's education was limited, the district court found that he could read and write, and that he understood the nature of the waiver.

The district court did not mention defendant's allegation that he was physically threatened, but, even assuming defendant's allegation to be true, we conclude that the alleged threat was not coercive. The alleged threat that defendant's head would be "busted in" if he turned around was made at the time of his arrest. It concerned his physical actions, not his statements. Moreover, he was not interviewed by the agents until later in the day. Defendant does not allege that at any time during the interview he was physically threatened. In fact, the agents offered to and did include defendant's mother in the interview. Therefore, we do not believe that defendant was coerced to confess during the interview as a result of the alleged conduct. We agree with the district court and hold that defendant's confession was voluntarily and knowingly made.

### 2. Evidence Seized at the Picnic Site

■ Defendant argues next that the district court erred in failing to suppress the military ammunition box containing .223–caliber rounds of ammunition, the AR–15 cleaning materials and the marijuana in the cardboard box, all of which were seized from the picnic site owned by his parents. Defendant also alleges that the district court erred in failing to suppress the 12–gauge sawed-off shotgun found inside of a tent on the site. Defendant emphasizes that a search warrant had not been acquired by the law enforcement officers prior to seizing these items.

The district court held that the items were properly seized as part of a "protective sweep" to protect the safety of the agents. Alternatively, the court held that the seizure was permissible because defendant had no reasonable expectation of privacy in the area searched. For the reasons stated below, we agree that all of the items from the picnic site and from inside of the tent were permissibly seized.

First, the search of defendant's parents' property and the seizure of items found there were valid because defendant had no legitimate privacy expectations in the picnic site. Defendant has the burden of showing that: (1) he manifested a subjective expectation of privacy in the area searched; and (2) his expectation of privacy is objectively reasonable. *See California v. Ciraolo,* 476 U.S. 207, 211, 106 S.Ct. 1809, 1811, 90 L.Ed.2d 210 (1986). Defendant has failed to meet this burden.

It is well settled that "an individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." *Oliver v. United States,* 466 U.S. 170, 179, 104 S.Ct. 1735, 1741, 80 L.Ed.2d 214 (1984). The picnic site owned by defendant's parents was located in an "open field". "The 'open fields' doctrine, first enunciated by this court in *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), permits police officers to enter and search a field without a warrant." *Oliver,* 466 U.S. at 173, 104 S.Ct. at 1737. The open fields doctrine does not require the area to be open or a field, but includes thickly wooded areas as well. *Id.* at 180, n. 11, 104 S.Ct. at 1742, n. 11.

The picnic site clearly falls within the definition of open fields which was set forth in *Oliver.* It was located in a publicly accessible, wooded area and was on 214 acres of land. The picnic site was not located near defendant's parents' home. Defendant's parents did not even attempt to create privacy in the area, such as erect fences or signs. Moreover, the picnic site contained no residential dwellings. There was a tent on the site, but there was no indication that the tent was like a "home" or even a temporary habitation. Therefore, the area surrounding the tent was not like the area immediately surrounding a home, in which an individual does have a legitimate privacy interest. *Id.* at 178, 104 S.Ct. at 1741. This is not to say that defendant had no privacy interest in the tent itself, but merely that the presence of

the tent, in which no one was apparently residing, did not create a privacy interest in the otherwise non-private area surrounding it. Accordingly, we hold that defendant had no legitimate privacy interest in the picnic site.

■ Having determined that the agents legitimately searched the picnic site, we hold that the seizure of those items located on the site was also valid. An officer must have probable cause to believe that items seized during a search are evidence of a crime in order for the seizure to be valid. *Arizona v. Hicks*, 480 U.S. 321, 326–27, 107 S.Ct. 1149, 1153–54, 94 L.Ed.2d 347 (1987). Under the circumstances of this case—that a significant marijuana raid was in progress, the suspected presence of an armed individual in the woods and the firing of a booby-trapped shotgun—the agents had probable cause to believe that the ammunition, gun cleaning materials and marijuana seized from the picnic site were evidence of a crime. Thus, the search of the picnic site and the seizure of items found there were properly admitted into evidence at defendant's trial.

■ In addition, the search of the tent and the seizure of the shotgun in the tent were valid based on the government's legitimate interests as weighed against any privacy expectation which defendant may have had in the tent. The cursory search of the tent by the agents is analogous to a "protective sweep." "A protective sweep is a quick and limited search of a premise, incident to an arrest and conducted to protect the safety of police officers and others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Maryland v. Buie*, 494 U.S. 325, ——, 110 S.Ct. 1093, 1094, 108 L.Ed.2d 276 (1990). In order for officers to search an area under the "protective sweep" exigency, there must be "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer believing that the area to be swept harbor[ed] an individual posing a danger to those on the ... scene." *Buie*, 110 S.Ct. at 1098. Moreover, items which are in the officer's plain view during the course of the lawful search and which the officer has probable cause to believe are evidence of a crime may be validly seized. *Id.* at 1096.

The Court in *Buie* recognized that, generally, the search of a house or office is not reasonable without a warrant issued on probable cause. However, in the context of that case, where a person was arrested in his home and the arresting officers had a reasonable belief that the basement of the home may have harbored an individual posing a danger to the officers, a cursory, visual search of the basement was permissible. The exigency created by the potential for danger outweighed the defendant's privacy expectations.

In addition to *Buie*, the Supreme Court has recognized the propriety of a warrantless search under the exigency of securing an area to protect officers in several contexts. *See Michigan v. Long*, 463 U.S. 1032, 1049–50, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983) (the search of the passenger compartment of an automobile which has been lawfully stopped, "limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts, which taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons"); *Terry v. Ohio*, 392 U.S. 1, 24, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889 (1968) (where a reasonably prudent officer, who has lawfully stopped an individual on the street, has a reasonable belief that the person stopped is armed and dangerous, a frisk for weapons on the person is permissible "when weighed against the 'need for law enforcement officers to protect themselves and other prospective victims of violence' ").

We agree with the district court that the totality of the circumstances in this case was such that the agents reasonably believed that the tent posed a danger to the agents. This exigency outweighed any privacy interest which defendant may have had in the tent.

The Court emphasized in *Buie* that "a protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found." *Buie*, 110 S.Ct. at 1099. Here the tent that was searched by the agent had an unzipped flap, so that the agent was only required to lift the flap to look inside of the tent. This was a mere cursory inspection of an area in which someone could easily have been hiding. Therefore, we hold that the search was sufficiently narrow to be valid and the evidence seized from inside of the tent was properly admitted at trial.

### 3. *Admission of Letters Written by the Government's Witness*

■■■ Defendant argues that the district court erred in allowing the government on redirect examination to offer into evidence the two letters from which defense counsel cross-examined Christian, defendant's cellmate. Defendant contends that the letters were irrelevant and self-serving. We disagree.

The government called Christian as a witness in its case-in-chief. Christian testified that defendant made certain admissions to him in jail concerning defendant's participation in the marijuana operation and in setting up the booby-trapped shotgun. On cross-examination, counsel for defendant impeached Christian with several prior convictions and by reading portions of two letters which Christian had written to the prosecution concerning his willingness to cooperate and his reasons for cooperating.

Defense counsel made extensive use of the letters on cross-examination, emphasizing that Christian would do anything he could do to assist the government. The implication was that Christian would possibly even lie to assist the government if it would help him in return. The statement which defense counsel read to the jury, when read in context, however, does not portray the same impression as when the statement is read alone. For example, the

quotation cited by counsel for defendant, "I'll do anything I can to assist you.... I've got to make a change," has different implications when read in context. The statement in its entirety reads as follows:

> In all, I do want you to know that I am truly sorry for what I did—the mere thought of losing my wife over all this has made me think in different ways—I will do anything I can to assist you or those authorities in Atlanta. I have got to make a change—my life is going nowhere down the road I am presently on....

Joint Appendix at 622 (Letter from Tom Christian to Steve Cook, Prosecutor).

Rule 106 of the Federal Rules of Evidence provides: "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." The government's sole purpose for admitting the letters into evidence was to eliminate any misleading impression created by the use of selected portions of each letter. We do not find any error in the district court's admission of these letters for this purpose.

### 4. *Exhibits from the Department of Treasury, Bureau of Alcohol, Tobacco and Firearms*

■■■ Defendant argues that the district court erred in admitting into evidence two certified documents from the Department of Treasury, Bureau of Alcohol, Tobacco and Firearms (the "Bureau"). These documents indicated the length of the sawed-off shotgun found in the tent and that the gun was unregistered. Defendant maintains that the documents were inadmissible because his copy of the documents did not bear seals. He argues that these documents were therefore inadmissible hearsay.

The government concedes that defendant's copy of the documents did not bear a seal. However, the original documents, which were admitted into evidence, did bear

the appropriate seal. Defendant had an opportunity to review these documents and defendant cites no authority for his proposition that the document copies provided to him should also have been sealed. Therefore, the district court held that the documents were admissible as self-authenticating documents under Fed.R.Evid. 902(1).[1] In addition, the documents were admissible because they were offered to prove the absence of a public record. Fed.R.Evid. 803(10).[2] *See also United States v. Combs,* 762 F.2d 1343, 1348 (9th Cir.1985); *United States v. Wilson,* 732 F.2d 404, 413–14 (5th Cir.1984), *cert. denied,* 469 U.S. 1099, 105 S.Ct. 609, 83 L.Ed.2d 718 (1984). We agree with the district court's determination that both documents were admissible for the reasons stated.

B. Failure to Submit the Issue of the Amount of Marijuana in Defendant's Possession to the Jury

    ▮ Defendant's next argument is that the district court erred by failing to advise the jury of the significance of the amount of marijuana involved in the offense for which defendant was charged and by failing to submit the question of quantity to the jury. Defendant further claims that the district court erred by applying the preponderance of the evidence standard in determining the amount of marijuana involved for purposes of sentencing. We affirm the district court's quantity determination, but we do so with reservation.

    The crux of defendant's claim is that the quantity of marijuana was an element of the offense under 21 U.S.C. § 841. Section 841 separately delineates the unlawful action and the penalty for the unlawful action. Subsection 841(a) provides:

**1.** Fed.R.Evid. 902 provides in pertinent part that: "Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to ... (1) Domestic public documents under seal. A document bearing a seal purporting to be that of the United States, or of any State, ... and a signature purporting to be an attestation or execution."

**2.** Fed.R.Evid. 803 provides that documents for the following purpose are not excluded by the hearsay rule:

(a) *Unlawful acts*

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

    (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; ....

21 U.S.C. § 841(a)(1).

Subsection 841(b) states:

(b) *Penalties*

Except as otherwise provided in section 845, 845a, or 845b of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

(1)(A) In the case of a violation of subsection (a) of this section involving—

    .    .    .    .    .

    (vii) 1,000 kilograms or more of a mixture of a substance containing a detectable amount of marihuana, or 1000 or more marihuana plants regardless of weight;

    .    .    .    .    .

such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life....

21 U.S.C. § 841(b)(1)(A).

According to defendant, as a part of or after the jury's determination that defendant violated § 841(a), the jury should also have determined the quantity of marijuana which defendant unlawfully manufactured. The court's refusal to submit the issue to the jury and to make a judicial determination under the preponderance of the evidence standard violated defendant's due process rights and his sixth amendment right to a jury trial.

    Recently, this Court held that there is no due process or sixth amendment violation

(10) *Absence of public record or entry.* To prove the absence of a record, report, statement or data compilation, in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency, evidence ... that a diligent search failed to disclose the record, report, statement, or data compilation, or entry.

for the district judge, rather than jury, to determine the quantity of drugs involved for offenses under § 841 and to do so under the preponderance of the evidence standard. *United States v. Hodges,* 935 F.2d 766 (6th Cir.1991). The Court explained that quantity is not an element of the offense. Rather, the question of quantity is raised only in the penalty provision of § 841 and is therefore properly left to the judge's determination for sentencing. *Id. See also United States v. Sawyers,* 902 F.2d 1217 (6th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2895, 115 L.Ed.2d 1059 (1991); *United States v. Moreno,* 899 F.2d 465 (6th Cir.1990). The issue need not be submitted to a jury and the court may use the preponderance of the evidence standard in making the determination.

This circuit first addressed this issue in *Moreno.* In *Moreno,* the jury returned a verdict stating that the defendant was guilty of conspiring to distribute 500 or more grams of cocaine. The district court sentenced according to the quantity found by the jury. The district court reasoned that it was bound by the jury's determination that the defendant was guilty of the lesser offense for distributing 500 or more grams, rather than an offense for distribution of five or more kilograms. We held that "the district court committed error both by treating 21 U.S.C. § 841(b) as a statute involving lesser included offenses and by considering itself bound by the jury's findings." *Moreno,* 899 F.2d at 473. "The sentencing judge, not the jury, has the prerogative to make a determination of the quantity of drugs involved in the scheme and to sentence accordingly." *Id.* In addition, the *Moreno* Court stated that "[b]ecause § 841(b) is a penalty provision only, a determination of the quantity of cocaine by a preponderance of the evidence likewise satisfies due process." *Id.*

We again addressed the issue in *Sawyers.* We held in *Sawyers,* citing *Moreno,* that the jury need not have been given a special verdict question as to the quantity of drugs involved in a § 841 offense. We again stated that quantity is not an element of the offense and should be deter-mined by the court at the time of sentencing.

In addition to the cases in this circuit, we are aware of the great weight of authority holding that quantity is not an element of a § 841 offense. *See United States v. Madkour,* 930 F.2d 234 (2d Cir.1991); *United States v. Cross,* 916 F.2d 622 (11th Cir. 1990) (per curiam), *cert. denied,* — U.S. ——, 111 S.Ct. 1331, 113 L.Ed.2d 263 (1991); *United States v. McNeese,* 901 F.2d 585 (7th Cir.1990); *United States v. Jenkins,* 866 F.2d 331 (10th Cir.1989); *United States v. Kinsey,* 843 F.2d 383 (9th Cir. 1988), *cert. denied,* 487 U.S. 1223, 108 S.Ct. 2882, 101 L.Ed.2d 916 (1988); *United States v. Gibbs,* 813 F.2d 596 (3d Cir.1987), *cert. denied,* 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987); *United States v. Wood,* 834 F.2d 1382 (8th Cir.1987). We feel that the courts have misjudged the issue and note our disagreement for the following reasons.

One of the first cases discussing the issue of whether quantity is an element of a § 841 offense was *United States v. Alvarez,* 735 F.2d 461 (11th Cir.1984). *Alvarez* stated that quantity is a critical element of the offense. *Id.* at 468. In *Alvarez,* the quantity of substance for which the defendants were being charged was not specified in the indictment. The Eleventh Circuit concluded that because the indictment did not allege a conspiracy involving more than one thousand pounds of marijuana, it was impossible to tell from a general jury verdict either the substance or quantity upon which the jury based its result. Therefore, the *Alvarez* court held that the enhanced sentences imposed pursuant to § 841(b)(1)(B) were invalid. *Id.* at 468.

*Alvarez* has been distinguished from cases such as the present one, in which the quantity for which defendant was being charged was alleged in the indictment. *See, e.g., Gibbs,* 813 F.2d at 600. Here, defendant was charged specifically with possessing 1,000 or more marijuana plants. In such circumstances, the Eleventh Circuit has itself departed from a broad reading of *Alvarez* and held that the jury need not determine quantity where an amount has

been alleged in the indictment which supports an enhanced sentence. *See Cross,* 916 F.2d at 623.[3]

In our view there is no practical distinction between *Alvarez* and cases like the present one. In the instant case, the jury specifically inquired about the significance of over 1,000 plants in the first count. Joint Appendix at 428. After consulting with the prosecution and defense, the district court charged the jury as follows:

> As far as you are concerned, the number of one thousand marijuana plants in Count 1 is of no significance. If the Government has proved the elements of the offense[:] first, defendant manufactured marijuana, a Schedule 1 controlled substance; ... second, it was grown intentionally[,] then the defendant would be guilty of this offense. Otherwise, he would not.

Joint Appendix at 432 (Jury Charge).[4] Since the jury was explicitly instructed not to consider quantity in deciding on defendant's guilt or innocence under § 841(a), it is irrelevant that the indictment specifically charged defendant with manufacturing 1,000 or more marijuana plants.

Contrary to our circuit's controlling precedent, we believe that quantity is a critical element of a § 841 offense which must be determined by the jury regardless of whether quantity has been alleged in the indictment.[5] We reach this conclusion primarily based on the critical impact that the factual determination of quantity has on the establishment of the penalty for a

§ 841 offense. Quantity is a substantial factual issue which should be given full consideration by the jury in order to give defendants who are charged under § 841 a full and fair hearing.

Most of the courts which have concluded that quantity is not an element of a § 841 offense have done so on the basis that quantity is listed under the penalty provision of § 841. It has been reasoned that Congress intended that this factor be relevant only for sentencing. The Supreme Court has admonished that it is normally within the power of the legislature to regulate procedures under which laws are to be carried out. *See McMillan v. Pennsylvania,* 477 U.S. 79, 85, 106 S.Ct. 2411, 2415, 91 L.Ed.2d 67 (1986). However, the procedure is unconstitutional where it "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.*

Assuming that Congress intended to make quantity a consideration only for sentencing, that charge is of no avail if the procedure adversely affects defendant's jury trial rights.[6] We are not required to hold that quantity may be considered for sentencing by the district judge under the preponderance of the evidence standard merely because it is listed under the penalty provision. Legislative bodies do not have the unfettered discretion to lessen the government's burden of proof of a criminal charge simply by characterizing a factor as a penalty consideration rather than an element of the offense. Nor are we limited to

---

3. It should be noted that *Cross* did not acknowledge *Alvarez* in concluding that quantity is not an element of a § 841 offense whereby the government must allege and prove quantity in order to impose sentence under § 841(b).

4. The district court correctly instructed the jury under the rule established in *Moreno* and *Sawyers.* The *Moreno* court held that the district court must not abide by a jury determination of quantity, but must independently make this determination. The *Sawyers* court also held that a special verdict question should not be submitted to the jury as to quantity.

5. We note that at least one court has concluded that even where quantity is not alleged in the indictment, quantity may be determined by the judge at sentencing because quantity is not an

element of a § 841 offense. *See Wood,* 834 F.2d at 1388.

6. We do not necessarily believe that Congress intended for quantity to be a consideration solely for sentencing. We find the dissent in *United States v. Gibbs,* 813 F.2d 596 (3d Cir.1987), persuasive. In his dissent, Chief Judge Aldisert pointed out that:

> Congress made the 1,000 pound marijuana quantity the fulcrum upon which turns the degree of opprobrium attached to the crime, and the concomitant degree of punishment available. Given the importance of the quantity of marijuana involved, I would hold that it was intended to be an element of a greater inclusive offense under § 841(b)(6).

*Id.* at 604.

a perfunctory analysis of legislative procedures under which laws are to be carried out. We remain mindful of the Supreme Court's admonition that it is normally within the legislature's power to regulate procedures, and such procedures are only subject to scrutiny where a fundamental principle of justice is offended. We believe that a judicial determination of quantity under § 841 at sentencing offends one of our most fundamental principles of justice.

The determination of such a substantial factual issue by the district judge at sentencing expands the role of sentencing. In its decision upholding the United States Sentencing Guidelines (the "guidelines"), the Supreme Court noted that sentencing is "the function of determining the scope and extent of *punishment.*" *Mistretta v. United States,* 488 U.S. 361, 364, 109 S.Ct. 647, 650, 102 L.Ed.2d 714 (1989) (emphasis added). Sentencing serves the discrete purpose of determining an appropriate *level of punishment* for the crime of which the defendant has been found guilty. Therefore, substantial factual issues which measure the extent of the criminal activity should not generally be determined at sentencing.

The Supreme Court thoroughly discussed the purpose of sentencing and the determinants in that process in *Mistretta.* The Court explained that traditionally judges had broad discretion in sentencing because of the judge's ability to assess the offender's amenability to rehabilitation. The district judge's determination was given great deference because " 'the sentencing judge sees more and senses more' than the appellate court." *Id.* Even with such broad discretion, the district judge's determination was limited to an assessment of the defendant's character in an attempt to provide effective sentencing for that particular individual. The district court was not expected to make critical factual determinations about the activity which the offender was accused of committing. The Sentencing Guidelines Act of 1984, 28 U.S.C. § 994, further restrained the district judge's discretion in sentencing.

The guidelines provided mandatory ranges for sentencing because "[s]erious disparities in sentences ... were common." *Mistretta.* 488 U.S. at 365, 109 S.Ct. at 651. The guidelines were established to ensure uniformity and proportionality in sentencing. In order to accomplish that end, the Commission set forth parameters for sentencing based on the "categories of offenses and defendants according to various specified factors." *Id.* at 368, 109 S.Ct. at 652. The underlying assumption is that those categories are determined prior to sentencing. In addition, judicial determination of quantity under § 841 restores broad discretion in the district judge.

This is not to say, of course, that substantive factors may never be determined at sentencing. In *McMillan* the Supreme Court held that a penalty provision which provided for enhanced sentencing where the defendant visibly possessed a firearm in carrying out the alleged crime was for sentencing purposes only. This factor was not an element of the offense which needed to be determined by the jury. The Court noted, however, that the visible possession of a firearm factor did not provide for an increase in the maximum penalty for the underlying felony. Rather, "it merely require[d] a minimum sentence, ... which may be more or less than the minimum sentence that might otherwise have been imposed." *Id.* at 83, 106 S.Ct. at 2414. Furthermore, "the risk of error ... is comparatively slight—visible possession is a simple, straightforward issue susceptible of objective proof." *Id.* at 84, 106 S.Ct. at 2415.

The Supreme Court noted that in a previous case it had "rejected the claim that whenever a State links the 'severity of punishment' to 'the presence or absence of an identified fact' the State must prove that fact beyond a reasonable doubt." *Id.* (citing *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)). However, as noted above, whether a particular fact must be proven beyond a reasonable doubt depends on the nature of the factor to be determined: 1) whether the risk of error in determining the issue is slight, and 2) whether the factor substan-

tially affects sentencing. *See McMillan,* 477 U.S. at 83–84, 106 S.Ct. at 2414–15.

The risk of error in determining quantity under § 841 is substantial. As the instant case illustrates, quantity is not a "simple, straightforward issue susceptible of objective proof." Rather, it is often a hotly contested issue which must frequently be proved based on circumstantial evidence.

Moreover, quantity under § 841 is a factor which substantially affects sentencing. For example, for manufacturing less than 50 kilograms of marijuana, the sentence is imprisonment of five years or less. *See* § 841(b)(1)(D). The mandatory sentence is substantially greater if a person is convicted for manufacturing 100 or more plants. Then § 841(b) mandates a term of imprisonment of more than five years but less than 40 years. *See* § 841(b)(1)(B)(vii). The sentence is even greater for manufacturing 1,000 or more marijuana plants. If convicted for this quantity, a person faces a mandatory sentence of at least ten years to life in prison. *See* § 841(b)(1)(A)(vii).

Because quantity under § 841 is such an important and disputable factual issue, it should be determined by the jury. Judicial determination of quantity under § 841 at sentencing undermines the function of the jury. Under the present rule, the jury's function is severely limited to merely making a determination that a defendant engaged in *some* illegal activity under § 841. The Supreme Court has stated: "[m]aintenance of the jury as a fact-finding body is of such importance that any seeming curtailment of the right to a jury trial should be scrutinized with utmost care." *See Dimick v. Schiedt,* 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1934). We believe that the rule as it now stands seriously reduces the jury's function and empowers the district judge to make one of the most critical factual determinations regarding the defendant's culpability. We cannot support this result.

The seriousness of such a rule is well illustrated by the facts in the instant case. At issue in this case were over 89,000 marijuana plants which were found in patches near land owned by defendant's parents.

The agents also found, however, a marijuana plant being dried in a cardboard box, which defendant confessed to owning. It is possible that the jury believed beyond a reasonable doubt that defendant was guilty of manufacturing the marijuana in the cardboard box, but could not conclude beyond a reasonable doubt that defendant manufactured any of the 89,000 marijuana plants in the patches.

Under the present rule, the jury had to find defendant guilty under § 841(a), as it did, for possession of a controlled substance based on defendant's manufacture of the single marijuana plant. Hypothetically, the jury was prohibited from specifying the limit of its finding. Since the district court's factual finding of quantity is made under a lower standard, it might find defendant guilty of the higher offense. The district court's quantity determination may have directly contradicted the basis for the jury's conclusion, undermining the jury's function. This quantity determination would also mandate a substantially greater penalty of at least ten years up to life imprisonment compared to a maximum of five years based on the jury's hypothetical finding. Such a result offends one of our most fundamental rights—the right to be tried by a jury of one's peers.

For these reasons, we note our disapproval of and disagreement with the above cases, which hold that the quantity of drugs involved in a § 841 offense must be determined by the district court at sentencing applying the preponderance of the evidence standard. Unfortunately, we are bound by this law and must affirm the district court's determination in the instant case.

## C. The Jury Verdict

■ Defendant's final argument is that there was insufficient evidence to prove his guilt beyond a reasonable doubt for each of his three convictions. At the close of the government's case at trial, defendant failed to move for a judgment of acquittal. At the close of the defendant's case, defendant moved for a judgment of acquittal, which was denied. The government called a wit-

ness in rebuttal, and at the conclusion of that evidence, defendant failed to renew his motion for judgment of acquittal. Failure to renew a motion for judgment of acquittal at the close of all the evidence limits the reviewing court to examine for plain error or to determine whether a manifest miscarriage of justice has occurred. *See United States v. Pennyman,* 889 F.2d 104, 105 n. 1 (6th Cir.1989); *United States v. Rodriguez,* 882 F.2d 1059, 1063 (6th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990). Based on our review of the record, we find that there was no plain error. Accordingly, we affirm the jury verdict.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of conviction and sentencing order entered by the Honorable R. Allan Edgar, United States District Judge of the Eastern District of Tennessee.