986 F.2d 1423
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jefferson BURGESS, Defendant-Appellant.
 No. 92-1095.
 United States Court of Appeals, Sixth Circuit.
 Feb. 24, 1993.
 
 Before KENNEDY and SUHRHEINRICH, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Jefferson Burgess appeals from his conviction and sentence of conspiracy to possess with intent to distribute and to distribute cocaine (21 U.S.C. §§ 846, 841(a)(1)), distribution of cocaine, aiding and abetting the distribution of in excess of 5,000 grams of cocaine (21 U.S.C. § 841(a)(1), 18 U.S.C. § 2), and unlawful use of a communication facility. (21 U.S.C. § 843(b)).
 
 I.
 
 2
 Defendant was arrested on September 25, 1987, for selling cocaine to state and federal officers. The arrest resulted from an investigation by a joint task force of agents from the United States Drug Enforcement Administration (DEA) and Detroit police officers commenced an investigation. The officers were assisted by a confidential informant, Tadarral Hackney, a/k/a Carlos.
 
 
 3
 Upon arrest, defendant was interviewed by Sergeant John Cannon and Investigator Derrick Anderson of the DEA. The DEA officers intended to solicit defendant's assistance in future investigation against police officers and civilians involved in drug trafficking. Defendant made inculpatory statements concerning his involvement in the cocaine transactions and implicated other Detroit police officers. Defendant also admitted that he had been purchasing cocaine from co-defendant Slater for the past six months.
 
 
 4
 Burgess was indicted on October 7, 1987, on charges of conspiracy to possess with intent to distribute and to distribute cocaine (Count 1), distribution of cocaine, aiding and abetting the distribution of in excess of 5,000 grams of cocaine, and unlawful use of a communication facility. Defendant originally entered into a plea agreement with the government, which was later set aside at the government's behest due to defendant's failure to cooperate in other investigations as agreed.
 
 
 5
 Defendant was tried three times, the first two ending in mistrials. The third trial commenced on January 23, 1990, and defendant was convicted on all three counts on February 23, 1990. On March 29, 1990, before sentencing, the trial judge, the late Honorable Ralph M. Freeman, died. The case was reassigned on April 4, 1990, to United States District Judge Paul V. Gadola.
 
 
 6
 On June 29, 1990, defendant filed five motions, including a motion to adjourn sentencing until full review of the trial transcripts by the sentencing judge. Defendant was eventually sentenced on January 2, 1992, after the resolution of numerous additional motions filed by defendant between June 29, 1990 and December 30, 1991. The court sentenced defendant on Counts I and II to concurrent terms of forty-five years and to a five year term of supervised release. On Count III, defendant was sentenced to a term of four years to run concurrently to the sentences imposed on Counts I and II. No fines were imposed.
 
 
 7
 This appeal followed.
 
 II.
 A.
 
 8
 In his first argument on appeal, defendant claims that the district court's refusal to suppress certain inculpatory statements made during the interrogation after his arrest violated his Fifth Amendment right to due process. Specifically, defendant asserts that the serving of forfeiture papers in the middle of the interrogation session, and the use of defendant's friend and former partner, Derrick Anderson, to conduct the investigation constituted police coercion. Because defendant's allegation of police coercion implicates his due process rights under the Fifth Amendment, we review his entire claim de novo. United States v. Rigsby, 943 F.2d 631, 635 (6th Cir.1991), cert. denied, 112 S.Ct. 1269 (1992).
 
 
 9
 The voluntariness of a confession is determined by examining "the totality of the circumstances surrounding the confession, both the characteristics of the accused and the details of the interrogation, and determin[ing] their psychological impact on the accused's ability to resist pressures to confess." United States v. Brown, 557 F.2d 541, 546 (6th Cir.1977). To support a finding that a confession was involuntary, the defendant must prove that: "(1) the police activity was objectively coercive; (2) the coercion in question was sufficient to overbear defendant's will; and (3) defendant's will was, in fact, overborne as a result of the coercive police activity." Rigsby, 943 F.2d at 635; United States v. Newman, 889 F.2d 88, 94-95 (6th Cir.1989), cert. denied, 495 U.S. 959 (1990); McCall v. Dutton, 863 F.2d 454, 459 (6th Cir.1988), cert. denied, 490 U.S. 1020 (1989). The first element is objective, the second is subjective. McCall, 863 F.2d at 459.
 
 
 10
 As a preliminary matter we must address defendant's allegation that he never received Miranda warnings. McCall, 863 F.2d at 460 (the absence of Miranda warnings is one factor to be considered in assessing the voluntariness of a confession). The record reflects that defendant was fully advised of those rights. Officer John Cannon testified that immediately after defendant's arrest and prior to questioning, he [Cannon] read Burgess his Miranda rights from a "small manilla-colored card with the Miranda rights typed on them." (Cannon, Jt.App. at 43). Cannon also stated that defendant responded affirmatively when the officer asked him if he understood those rights. (Id.) Defendant has offered nothing other than his assertion to the contrary as evidence. We find no error.
 
 
 11
 As to the first element of involuntariness, we conclude that the conduct at issue here does not constitute coercive police conduct. The officer's actions are even less "egregious" than conduct we have found to be not coercive. See, e.g., Rigsby, 943 F.2d at 635-36 (confession in county jail after receiving Miranda warnings was voluntary, although at time of arrest officers threatened to "bust" defendant's head if he turned around where interview occurred later on day of arrest; nor did the fact that defendant's mother was present (at agent's request) during interview render confession coerced); Newman, 889 F.2d at 95 (defendant's mental incapacity due to alcoholism, even if it rendered him incapable of understanding significance of his statements to FBI agents, was insufficient to establish that statements were involuntary absent showing of misconduct by agents); McCall, 863 F.2d at 459-60 (display of weapons during interrogation, absent evidence that it was intended to extort a confession from accused was not coercive; shouting and confusion at time of arrest did not by itself constitute coercion); Cf., Williams v. Withrow, 944 F.2d 284, 289 (6th Cir.1991) (inculpatory statements of defendant were coerced where defendant was threatened with imprisonment if he did not cooperate and promised leniency if he did), cert. granted, 112 S.Ct. 1664 (1992). Defendant has not alleged that he was threatened in any way by the officers. We therefore find that defendant has failed to establish the first element of a Fifth Amendment due process violation.
 
 
 12
 Because proof of police coercion is a threshold requirement for defendant's claim, we need go no further. See Colorado v. Connelly, 479 U.S. 157 (1986); McCall, 863 F.2d at 460. If we were required to, we would also find that defendant failed on the second element. The alleged coercion is simply insufficient to overbear the will of the accused. Defendant is a police officer, who admittedly had extensive experience with defendants' rights and criminal proceedings. Given this peculiar knowledge of the process of interrogation, it is inconceivable that he did not understand the consequences of his statements. Cf., McCall, 863 F.2d at 458 (defendant failed to prove that his will was overborne where defendant had a college education and displayed mental acuity prior to interrogation by driving a number of miles down a winding road); United States v. Pelton, 835 F.2d 1067, 1073 (4th Cir.1987) (finding that petitioner was an educated man able to protect his own interests; thus personal characteristics did not support a finding that his will was overborne), cert. denied, 486 U.S. 1010 (1988).
 
 B.
 
 13
 Defendant contends that during the third trial, he was improperly denied the right to cross-examine DEA Special Agent Gregory Anderson concerning an internal DEA investigation of Anderson. Defendant contends that the report describes improper conduct between Anderson and other confidential agents which defendant claims show untruthfulness and dishonesty. Defendant apparently intended to impeach Anderson with the report.
 
 
 14
 Rule 608(b) states in relevant part that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility" may be explored on cross-examination when said conduct bears on the witness' "character for truthfulness or untruthfulness." Fed.R.Evid. 608(b); United States v. Brown, 946 F.2d 1191, 1196 (6th Cir.1991). Whether specific conduct is probative of a witness' truthfulness and honesty is a discretionary determination by the trial judge. Fed.R.Evid. 608(b); United States v. Hurst, 951 F.2d 1490, 1501 (6th Cir.1991), cert. denied, 112 S.Ct. 1952 (1992); United States v. Vinson, 606 F.2d 149, 156 (6th Cir.1979), cert. denied, 444 U.S. 1074 (1980).
 
 
 15
 Defendant has not pointed to any testimony in the record that he was attempting to impeach with the report. We therefore agree with the district court that the allegations do not fall within the scope of Fed.R.Evid. 608(b), since it appears that defendant was in essence attempting to establish similarity of alleged improper conduct, not defendant's character for truthfulness.[1] Further, we likewise agree that cross-examination regarding allegations in an unrelated case would be unduly prejudicial and lead to confusion of the issues. The district court did not abuse its discretion.
 
 
 16
 The constitutional guarantee of the Confrontation Clause of the Sixth Amendment to confront hostile witnesses extends only "an opportunity for effective cross-examination ... not cross-examination in whatever way, and to whatever extent, the defense might wish." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original)). Thus, a trial judge retains wide latitude to impose reasonable limits on such cross-examination. Id. Constitutional error does not occur unless "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [defendant's] counsel been permitted to pursue his proposed line of cross-examination." Id. at 680; United States v. Martin, 920 F.2d 393, 396 (6th Cir.1990) ("Even in cases where an improper evidentiary ruling limits cross-examination the test is 'whether the jury had enough information, ... to assess the defense theory.' ") (citation omitted). Defendant was allowed to cross-examine Anderson at length regarding the taped conversation. (Anderson, Jt.App. at 554-568).
 
 C.
 
 17
 Defendant argues that the forty-five year sentence he received on Counts I and II was disproportionate to the crime and therefore constitutes cruel and unusual punishment in violation of the Eighth Amendment. Contrary to defendant's assertion, he was not sentenced under the Sentencing Reform Act, whose effective date was November 1, 1987. The pre-Guidelines sentencing range for violations of 21 U.S.C. §§ 846 and 841(a)(1), was a mandatory minimum custodial sentence of ten years imprisonment and a maximum possible sentence of life imprisonment.
 
 
 18
 With respect to pre-Guidelines sentences, once it is determined that a sentence is within the applicable statutory limitations, appellate review is at an end. United States v. Frost, 914 F.2d 756, 773 (6th Cir.1990) (quoting Dorszy v. United States, 418 U.S. 424 (1974), cert. denied, 429 U.S. 977 (1976)). This court has stated that "[i]t is axiomatic that the imposition of sentences within the statutory limits lies almost entirely within the discretion of the trial judge." Id. (citation omitted). Moreover, we have routinely rejected such Eighth Amendment challenges in similar drug cases. See, e.g., United States v. Straughter, 950 F.2d 1223, 1236 (6th Cir.1991) (rejecting as "patently meritless" defendant's Eighth Amendment challenge to a 360-month sentence where there was evidence that defendant had dealt in over 55 kilograms of cocaine; guidelines offense), cert. denied, 112 S.Ct. 1505 (1992); United States v. Walton, 908 F.2d 1289 (6th Cir.) (forty-year sentence for conspiracy to distribute in excess of 80 kilograms of cocaine was not cruel and unusual punishment where defendant received maximum statutory sentence; guidelines offense), cert. denied, 111 S.Ct. 532 (1990); Young v. Miller, 883 F.2d 1276, 1282-86 (6th Cir.1989) (rejecting Eighth Amendment challenge by first time offender convicted of possessing with intent to deliver 1,300 grams of heroin sentenced to life imprisonment without parole; pre-guidelines case), cert. denied, 111 S.Ct. 2886 (1991). As we noted in Walton, defendant's sentence is "not ... unusual in today's climate of drug intolerance." Walton, 908 F.2d at 1300.
 
 D.
 
 19
 Defendant argues that his Fifth and Sixth Amendment rights were violated due to unreasonable delay in both his trial and in sentencing. Defendant suggests first that it was error for the district court to rely exclusively on the newspaper article in granting the mistrial and not also on the alleged jury tampering by the government. Defendant does not indicate how the district court's failure to use both incidents as a basis for granting a mistrial violates his due process rights and does not pursue the government jury tampering charge on appeal. We therefore treat this aspect of the claim as meritless. In any event, the second trial was commenced roughly six weeks after the first was declared a mistrial.
 
 
 20
 Defendant also argues that the twenty-two month delay between conviction and sentencing violates his Sixth Amendment right to a speedy trial. This court has recognized that sentencing is part of the trial for purposes of Sixth Amendment speedy trial protection. United States v. Juvenile Male, 939 F.2d 321, 325 n. 6 (6th Cir.1991); United States v. Reese, 568 F.2d 1246, 1253 (6th Cir.1977). This court evaluates such claims under a four-factor analysis: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant has asserted the right, (4) and any prejudice to the defendant from the delay. Payne v. Rees, 738 F.2d 118, 122 (6th Cir.1984) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)); Juvenile Male, 939 F.2d at 325 n. 6 (stating that four-factor analysis applies to sentencing delays; dicta).
 
 
 21
 It is apparent from a review of the record that Burgess himself is principally responsible for the twenty-two month delay between conviction and sentencing. Admittedly, three of those months were due to the death of the trial judge and subsequent transfer of the case to Judge Gadola. But, as pointed out by the district court, defendant filed sixteen post-trial motions, one of which was for an adjournment to allow Judge Gadola to read the entire transcript of the trial (sixteen volumes). Further, even though the motion was filed on June 29, 1990, defendant did not tender the transcripts to the court until the spring of 1991. Like the district court, we find that this claim is without merit.
 
 E.
 
 22
 Defendant contends that the trial court erred in failing to give a specific jury instruction on mental deficiency. Defendant did not offer a specific instruction below or object to the instructions given at trial. This claim is therefore waived on appeal. Fed.R.Crim.P. 30; United States v. Sturman, 951 F.2d 1466, 1475-76 (6th Cir.1991), cert. denied, 112 S.Ct. 2964 (1992). Nor do we find that the alleged omission was plain error. See Fed.R.Crim.P. 52(b); United States v. Rodriguez, 882 F.2d 1059, 1064 (6th Cir.1989) ("Plain errors are limited to those so objectionable that they should have been apparent to the trial judge or strike at the fundamental fairness, honest, or public reputation of the trial."), cert. denied, 493 U.S. 1084 (1990). Neither of the two mental health professionals who testified in his behalf at trial testified that defendant was incapable of formulating the intent to sell cocaine. In fact, Dr. Rhonda Beale, Ph.D., a psychiatrist, testified that in her opinion defendant was "a competent individual." (Beale, Jt.App. at 605). Dr. Ennis Berker, Ph.D., a neuropsychologist, who had also treated defendant, acknowledged that nothing in his testing of Burgess indicated that defendant was incapable of formulating the intent to sell cocaine. (Berker, Jt.App. at 686).
 
 F.
 
 23
 Lastly, we must address the allegations raised in defendant's supplemental brief filed pro se. Defendant contends that his appointed counsel, Melvin Houston, refused to address three important issues in the principal appeal brief: defendant's predisposition to commit the crime charged, an inadequate jury instruction on the issue of entrapment, and a violation of the process based on the agents' manufacturing of the sentences by controlling the size of the transactions. We have carefully reviewed these allegations, and agree with Mr. Houston that they are utterly without merit. Mr. Houston's decision not to raise them on appeal was a responsible exercise of his professional judgment, and clearly reflects his understanding of the governing principles of law. We should also note that the quality of briefing and argument by Mr. Houston was not only satisfactory, but exemplary.
 
 
 24
 For all the foregoing reasons, defendant's judgment of conviction is AFFIRMED.
 
 
 
 [1]
 In any event, the allegations against Agent Anderson were ultimately found to be without merit