UNITED STATES of America, Appellee,

v.

**James B. SIMMONS, Appellant.**

UNITED STATES of America, Appellee,

v.

**Charles H. BOWERS, Appellant.**

**Nos. 91–1368, 91–1426.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1991.

Decided May 15, 1992.

Rehearing and Rehearing En Banc Denied July 29, 1992.

---

Thomas D. Carver, Springfield, Mo., for Simmons.

Robert J. Buonauro, Orlando, Fla., for Bowers.

Robert E. Monroe, Springfield, Mo., for appellee.

Before LAY,* Chief Judge, BRIGHT and HENLEY, Senior Circuit Judges.

BRIGHT, Senior Circuit Judge.

James B. Simmons and Charles H. Bowers separately appeal their convictions and sentencing for possession and distribution of cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), (b)(1)(B) and (b)(1)(C) (1988), distribution of crack on university property in violation of 21 U.S.C. § 845a(a) (1988) and conspiracy to distribute crack in violation of 21 U.S.C. § 846 (1988). After a joint trial, a jury convicted Bowers on one count of conspiracy to distribute more than fifty grams of cocaine base in violation of sections 846 and 841(b)(1)(A) (Count I), one count of distribution of cocaine base in violation of sections 841(a)(1) and (b)(1)(C) (Count III), one count of distribution of cocaine base on university property in violation of section 845a(a) (Count IV), one count of distribution of more than five grams of cocaine base in violation of sections 841(a)(1) and (b)(1)(B) (Count V), and one count of possession with intent to distribute cocaine base in violation of sections 841(a)(1) and (b)(1)(C) (Count VI). The jury acquitted Bowers on Count II (possession with intent to distribute more than five grams). The jury convicted Simmons on Count I (conspiracy to distribute more than fifty grams of cocaine base), Count III (distribution of cocaine base in violation of sections 841(a)(1) and (b)(1)(C)) and Count IV (distribution of cocaine base on university property).

The district judge applied section 2D1.1(c)(5) of the Sentencing Guidelines, which relates to offenses involving at least 150 grams but less than 500 grams of cocaine base. See United States Sentencing Commission, *Guidelines Manual*, § 2D1.1(c) (Nov.1990)[1] [hereinafter U.S.S.G.]. Bowers received a 262 month sentence (twenty-one years plus ten months) with a concurrent lesser sentence of 240 months (twenty years). Simmons received a sentence of three concurrent 135 month terms (eleven and one-quarter years). Appellants raise numerous issues on appeal, including: (1) Jencks Act violations; (2) improper governmental use of a confidential informant; (3) failure to suppress unlawfully seized evidence; (4) insufficiency of the evidence of conspiracy; (5) erroneous application of the Sentencing Guidelines; (6) failure to order disclosure of a confidential probation report; and (7) the 100:1 ratio in the Sentencing Guidelines for cocaine base discriminates against African–Americans in violation of the due process clause, the equal protection clause and the eighth amendment. We affirm the convictions but remand to the district court to resentence Charles Bowers.

## I. BACKGROUND

This case concerns two young African–American men, Charles H. Bowers (age twenty-six) and James B. Simmons (age twenty-four), who received scholarships to

---

* The Honorable Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

1. Because Simmons and Bowers were sentenced in February 1991, the district court applied the federal sentencing guidelines effective on November 1, 1990. All subsequent references in this opinion are to the guidelines manual effective on November 1, 1990.

play football at Evangel College in Springfield, Missouri. At some point, the record is not clear as to the precise time, they began to distribute crack. This was their first offense. The district court imposed heavy sentences pursuant to the probation officer's calculations under the federal guidelines for sentencing.

The sale of cocaine base which led to the convictions and these appeals occurred in Springfield, Missouri between January 1989 and June 1990. The original indictment charged Charles H. Bowers, James B. Simmons, Craig L. Bowers (a cousin of the co-defendant) and Phillip W. McCall with conspiracy to distribute and possess more than fifty grams of cocaine base (Count I). Count II of the indictment charged Charles Bowers and Phillip McCall with possession with intent to distribute more than five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B). Phillip McCall pleaded guilty to possession with intent to distribute and agreed to testify at trial. The jury acquitted Craig L. Bowers on the conspiracy count, the only charge against him.

On September 29, 1989, Springfield police officers arrested Phillip McCall at Silver Springs Park after observing drug-related activity. The police seized approximately five and one-half grams [2] of cocaine base from McCall during the arrest. McCall testified at trial that Charles Bowers drove him to the park, gave crack to him and to Craig Bowers, and asked them to sell it. The September 1989 incident served as the basis of the distribution charge against McCall and Charles Bowers in Count II of the indictment.

On October 9, 1989, Springfield Police Officer Dan Schrader and confidential informant Grenda Pierce purchased a forty

dollar rock of crack cocaine from Simmons and Charles Bowers in Silver Springs Park. After Bowers approached the car and asked them what they needed, Simmons gave Pierce two coin baggies containing a total of .18 grams [3] of cocaine base. This undercover purchase served as the basis of the distribution charge against Simmons and Charles Bowers in Count III of the indictment.

Kevin Crenshaw, a special agent with the Bureau of Alcohol, Tobacco and Firearms, made an undercover purchase from Simmons and Charles Bowers on November 1, 1989. Crenshaw purchased 2.35 grams [4] of cocaine base in a parking lot at Southwest Missouri State University. This sale provided the basis for the distribution on university property charge in Count IV of the indictment.

Crenshaw next purchased 29.6 grams [5] of cocaine base from Charles Bowers on November 14, 1989. The sale took place in the kitchen of Bowers's apartment. This transaction served as the basis of the distribution charge against Charles Bowers in Count V of the indictment.

On December 11, 1989, the Springfield police arrested Charles Bowers after pursuing his car into an alley. After searching the alley, the police recovered a packet of suspected drugs, which, upon chemical analysis, contained 1.79 grams [6] of cocaine base. This incident provided the basis for the possession charge against Charles Bowers in Count VI of the indictment.

On May 13, 1990, a Missouri state trooper in Butler County stopped a rental car which matched a description he received in a drug courier profile. After procuring the consent of passengers Craig, Robbie and Charles Bowers, Corporal Steven J. Hinesley searched the trunk. Wrapped in coffee

---

2. One expert testified that the police seized 5.5 grams of cocaine base from McCall. I Trial Transcript 111 [hereinafter __ Trial Tr. at __]. Another expert testified that the amount was 5.41 grams. II Trial Tr. at 212.

3. This figure was established by expert testimony at trial. II Trial Tr. at 313.

4. Although Crenshaw testified that he purchased a quarter-ounce (7.8 grams) on November 1,

1989, see II Trial Tr. at 217, expert testimony at trial established that he actually bought 2.35 grams at this time. Id. at 209.

5. This figure was established by expert testimony at trial. II Trial Tr. at 316.

6. This figure was established by expert testimony at trial. II Trial Tr. at 215.

grounds and an Orlando newspaper dated the previous day, he found six small plastic baggies containing an unidentified quantity of cocaine base.[7]

These facts provide an overview of the offenses charged. We will elaborate on the specific circumstances of the case as necessary to discuss the arguments raised on appeal.

## II. DISCUSSION

### A. Disproportionate Penalty For Crack Offenses

■ We consider and reject the constitutional challenges to the Sentencing Guidelines without lengthy discussion.

One gram of cocaine base carries the same penalty as 100 grams of cocaine powder for the purpose of determining an individual's base offense level under the Sentencing Guidelines. *See* U.S.S.G. § 2D1.1(c). Bowers asserts that ninety-seven percent of the defendants prosecuted for crack offenses in the Western District of Missouri between 1988 and 1989 were black. On the basis of this statistical evidence, Bowers contends that the 100:1 ratio for cocaine base discriminates on the basis of race in violation of the due process clause, the equal protection clause and the eighth amendment. Citing the same statistical evidence, Simmons frames his objection to the 100:1 ratio as a violation of the equal protection clause.

This court has already rejected the arguments Bowers and Simmons raise here, and we are bound by precedent to follow suit. *See, e.g., United States v. House,* 939 F.2d 659, 664 (8th Cir.1991) (100:1 ratio does not constitute disproportionate sentencing in violation of the eighth amendment, nor does it violate the equal protection clause); *United States v. Winfrey,* 900 F.2d 1225, 1227 (8th Cir.1990) (rejecting substantive due process and equal protection challenges); *United States v. Buckner,* 894 F.2d 975, 980 (8th Cir.1989) (crack penalties

are rationally related to the legitimate congressional objective of protecting the public against the highly potent and addictive nature of crack). Many of our sister circuits have similarly disposed of the constitutional arguments appellants raise. *See, e.g., United States v. Thomas,* 932 F.2d 1085 (5th Cir.) (enhanced penalty for cocaine base does not violate due process), *cert. denied,* —— U.S. ——, 112 S.Ct. 264, 116 L.Ed.2d 217 (1991); *United States v. Turner,* 928 F.2d 956 (10th Cir.) (same), *cert. denied,* —— U.S. ——, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991); *United States v. Avant,* 907 F.2d 623 (6th Cir.1990) (rejecting eighth amendment challenge to 100:1 ratio); *United States v. Cyrus,* 890 F.2d 1245 (D.C.Cir.1989) (same); *United States v. Solomon,* 848 F.2d 156 (11th Cir.1988) (per curiam) (same). Accordingly, we reject Bowers's constitutional challenges to the 100:1 ratio for cocaine base in the Sentencing Guidelines.

Were we writing from a clean slate, however, we might accept as valid appellants' contentions relating to the disproportionate penalty. The Minnesota Supreme Court recently rejected a similar requirement under state guidelines as contrary to the equal protection guarantees in the Minnesota Constitution. *See State v. Russell,* 477 N.W.2d 886 (Minn.1991). *But see United States v. Watson,* 953 F.2d 895, 898 n. 5 (5th Cir.1992) (declining to follow *Russell* and noting that the rational basis test under the Minnesota Constitution is more stringent than its federal counterpart); *United States v. Galloway,* 951 F.2d 64, 66 (5th Cir.1992) (same).

### B. Other Allegations of Error

We next reject appellants' allegations of error from prosecutorial violations of the Jencks Act,[8] improper payment of a confidential informant, insufficiency of the evidence of conspiracy and failure to suppress evidence obtained from the May 1990 auto-

---

7. Although an expert witness at trial identified the substance seized from the vehicular search on May 13, 1990 as cocaine base, he did not state the quantity of cocaine base found in the six baggies. II Trial Tr. at 206. Butler County

is located outside of the jurisdiction of the Western District of Missouri, where the case was tried.

8. 18 U.S.C. § 3500 (1988).

mobile search. These claims lack any substantial merit.

### C. Failure to Order Disclosure of Probation Report

We turn now to appellants' contention that the district court committed reversible error by failing to order disclosure of a confidential informant's probation report.

Simmons contends that the district court erroneously relied upon a Missouri statute to exclude from evidence the probation report of a confidential informant, Grenda Pierce. *See* Mo.Rev.Stat. § 217.780 (1986) (repealed and replaced by Mo.Rev.Stat. § 559.125 (1990)).[9] Simmons first asserts that the probation report constitutes *Brady* material which the prosecution should have disclosed. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Simmons also claims that failure to allow impeachment by reference to information in the report violated his sixth amendment right of confrontation. Finally, Simmons contends that Pierce waived the statutory privilege by taking the stand and testifying that she had not been subject to drug testing during her probation.

Bowers maintains that the Government violated the Jencks Act, 18 U.S.C. § 3500 (1988), by neglecting to give notice that Pierce would testify and by failing to disclose a pre-trial statement in which Pierce described her drug transactions with Simmons and Bowers. Bowers argues that the exclusion of Pierce's probation report compounded the prejudicial effect of the Government's failure to disclose *Jencks* material.

We agree that the district court erred by excluding the probation report. We are persuaded, however, that we must deem the error harmless.

In federal criminal cases, the federal law of privilege applies. *United States v. Corona*, 849 F.2d 562, 567 (11th Cir. 1988) (citing *United States v. Lindstrom*, 698 F.2d 1154 (11th Cir.1983); *United States v. Meagher*, 531 F.2d 752 (5th Cir.), *cert. denied*, 429 U.S. 853, 97 S.Ct. 146, 50 L.Ed.2d 128 (1976)), *cert. denied*, 489 U.S. 1084 (1989); *United States v. Holmes*, 594 F.2d 1167, 1171 (8th Cir.), *cert. denied*, 444 U.S. 873, 100 S.Ct. 154, 62 L.Ed.2d 100 (1979). Federal Rule of Evidence 501, which sets forth the general rule of privilege, specifically provides:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the *privilege of a witness* ... shall be governed by the *principles of the common law* as they may be interpreted by the *courts of the United States in the light of reason and experience.*

Fed.R.Evid. 501 (emphasis added).

Only if this were a civil case, which it is not, might we determine the privilege of a witness in accordance with state law. *See Simon v. G.D. Searle & Co.*, 816 F.2d 397, 402 (8th Cir.) (attorney-client privilege is determined by state law in a products liability action in diversity), *cert. denied*, 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987); *see also* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 501[02] (1991) ("[g]enerally in federal question cases, except those governed by the second sentence of Rule 501, federal privilege law will apply") (footnote omitted).

This court has already held that no privilege attaches under Rule 501 to statements made by a parolee to a probation officer. *Holmes*, 594 F.2d at 1171. In *Holmes*, the appellant contended that the

---

9. Mo.Rev.Stat. § 217.780 (1986) provides, in relevant part:

Information and data obtained by a probation or parole officer shall be privileged information, and shall not be receivable in any court. Such information shall not be disclosed directly or indirectly to anyone other than the members of a parole board and the judge

entitled to receive reports, except the court may in its discretion permit the inspection of the report, or parts thereof, by the defendant, or prisoner or his attorney, or other person having a proper interest therein, whenever the best interest or welfare of a particular defendant or prisoner makes such action desirable or helpful.

trial court erred by allowing the testimony of a probation officer, which allegedly should have been privileged. This court not only rejected the appellant's claim of error, but observed that "distinct dissimilarities" characterized the probation officer-parolee relationship and relationships such as attorney-client and physician-patient, in which a privilege has been recognized. *Id.*

■ Grenda Pierce, a confidential informant, testified on cross-examination that she had never been subjected to urinalysis as part of her probation on a state felony marijuana conviction. II Trial Tr. at 353. Gail Joy Barnekow, Pierce's probation officer, refused to answer whether she had any record of drug screenings performed on Pierce. Barnekow claimed that probation records are confidential under section 217.780 of the Missouri Code. II Trial Tr. at 489. Without requesting production for *in camera* inspection, the district court declined to issue a production order, citing Federal Rules of Evidence 403 and 608(b). The district court stated that "[t]he statute says it's privileged" and "[p]rivilege is privilege." III Trial Tr. at 492.

As counsel for the defense pointed out to the district court at the sentencing phase, however, Pierce underwent urinalysis testing during the course of her probation. Indeed, she tested positive for cocaine and marijuana on August 25, 1990, less than two months before trial.[10] Even though the district judge did not receive notice of the probation violation until *after* the conclusion of the trial, Pierce's probation office knew about the urinalysis results five days before Pierce testified and six days before Barnekow testified. That the results of the urinalysis may not have been typed into a formal violation report until after the conclusion of the trial does not justify the wholesale exclusion of the records. The probation office knew that Pierce failed a urinalysis and that information in some form should have been disclosed in the Pierce file. A simple *in camera* investigation could have resolved the issue while Pierce was available for cross-examination and undoubtedly would have led to the timely production of the written report.

We conclude that the district court erroneously ruled that section 217.780 of the Missouri Code protected Pierce's probation records. This court's decision in *Holmes* and the explicit language of Rule 501 stand for the proposition that the federal law of privilege, not a contrary state statute, governs the confidentiality of the challenged records. Under *Holmes*, no privilege attached to the information in Pierce's probation files. *See Holmes*, 594 F.2d at 1171. The district court's ruling to the contrary, made expressly upon the basis of the Missouri statute, constitutes error.[11]

■ We now consider whether the erroneous exclusion of the probation report violates the appellants' sixth amendment right of confrontation. The sixth amendment confrontation clause guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI. "Confrontation means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974). The inability of defense counsel to conduct effective cross-examination into possible bias from the probationary status of an adverse witness constitutes a denial of the right of confrontation. *Davis*, 415 U.S. at 318, 94 S.Ct. at 1111. A criminal defendant states

10. The Government contends that the district court received the probation violation report on October 22, 1990, after the conclusion of the trial. The violation report prepared by the probation office was dated October 19, 1990. The probation office, however, received the results of the urinalysis on October 11, 1990. Pierce testified on October 16, 1990. Barnekow testified on October 17, 1990.

11. As we dispose of this issue by relying on Rule 501, we do not discuss the district court's alternate rulings under Federal Rules of Evidence 403 and 608(b). Suffice it to say that because we hold that no privilege attached to the probation reports, waiver becomes irrelevant. We also note that no *Brady* violation occurred. because the results of the drug test were not shown to be available to the prosecution until after the trial. *See Brady*, 373 U.S. at 87, 83 S.Ct. at 1196–97.

a violation of the confrontation clause "by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986).

Each defense counsel attempted to impeach Pierce for bias by showing that her status as a probationer rendered her vulnerable to the prosecution. *See* II Trial Tr. at 347, 352–53, 403–04. Without the evidence that she recently failed a drug test given by her probation office, however, "the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness." *Davis,* 415 U.S. at 318, 94 S.Ct. at 1111. Although we do not speculate as to whether the jury would have found the prohibited line of inquiry persuasive, "defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Id.* Appellants have thus met the burden of showing a violation of the confrontation clause: the cross-examination permitted by the district court prevented them from engaging in otherwise appropriate cross-examination into a "prototypical form of bias," Pierce's status as a probation violator. *Van Arsdall,* 475 U.S. at 680, 106 S.Ct. at 1435–36.

■ We review denial of an opportunity to impeach for bias, like other confrontation clause errors, under *Chapman* harmless error analysis. *Id.* at 684, 106 S.Ct. at 1438 (citing *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) ("before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt")); *see also United States v. Copley,* 938 F.2d 107, 110 (8th Cir.1991) (same); *United States v. Anderson,* 881 F.2d 1128, 1139 (D.C.Cir. 1989) (same); *Lam v. Iowa,* 860 F.2d 873, 876 (8th Cir.1988) (same), *cert. denied,* 490 U.S. 1069, 109 S.Ct. 2072, 104 L.Ed.2d 637

(1989). "The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438. The final harmlessness determination "in a particular case depends upon a host of factors," including:

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id.* (citing *Schneble v. Florida,* 405 U.S. 427, 432, 92 S.Ct. 1056, 1059–60, 31 L.Ed.2d 340 (1972); *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728–29, 23 L.Ed.2d 284 (1969)).

■ After reviewing the record as a whole, *Lam,* 860 F.2d at 876, we are persuaded that the exclusion of Pierce's probation records amounts to harmless error beyond a reasonable doubt. The defense attorneys impeached Pierce effectively during otherwise extensive cross-examination. Pierce provided cumulative testimony which the Government corroborated with overwhelming evidence of guilt. *Cf. United States v. Weiss,* 930 F.2d 185, 199 (2d Cir.) (harmless error to exclude evidence of witness bias where witness admitted on cross as to incidents from which the alleged bias arose), *cert. denied,* —— U.S. ——, 112 S.Ct. 133, 116 L.Ed.2d 100 (1991); *United States v. Riley,* 657 F.2d 1377, 1388 (8th Cir.1981) (harmless error to exclude juvenile jail records of chief government witness when witness's own testimony about her drug and alcohol use is already before the jury), *cert. denied,* 459 U.S. 1111, 103 S.Ct. 742, 74 L.Ed.2d 962 (1983). Accordingly, we affirm both convictions.

### D. Sentencing Errors

Bowers next contends that the district court improperly applied the Sentencing Guidelines in determining his sentence.

Bowers first asserts that the district court improperly fixed his base offense level at 34 under U.S.S.G. § 2D1.1(c)(5) (Drug Quantity Table). Specifically, Bowers argues that the district court clearly erred by accepting the calculations in the presentence report [PSR], which relied on Grenda Pierce to attribute "approximately 360 grams of cocaine [base] to the [a]ppellant." Br. for Appellant Bowers at 36. Bowers alleges that the district court clearly erred by attributing forty-eight grams to him through the testimony of Phillip McCall. Bowers also claims that 12.54 grams of cocaine base seized during an allegedly unlawful automobile search should be deducted from the total calculation of drug quantity. Bowers maintains that the district court properly could have attributed to him 35.51 grams of cocaine base, which yields a base offense level of 30. *See* U.S.S.G. § 2D1.1(c)(7).

Bowers also asserts that the district court improperly enhanced his sentence by four levels for exercising a leadership role in "criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). At best, Bowers contends he deserved only a two-level enhancement for the activity he pursued with one other person, Simmons. *See* U.S.S.G. § 3B1.1(c).

The Government responds that the district court properly accepted, over Bowers's objections, the drug quantity calculations set forth in the original PSR. The Government reminds us that the district court had the opportunity at trial to observe the witnesses and determine their credibility. Finally, the Government contends that even if the district court erred in calculating the applicable guideline range, a remand for resentencing would not change Bowers's sentence, as the same sentence or guideline range would be found under different evidence. The Government also maintains that the district court properly found that Bowers exercised a leadership role within the meaning of U.S.S.G. § 3B1.1(a).

■ At trial, the government bears the burden of proof beyond a reasonable doubt; at the sentencing phase, however, the government must generally satisfy a preponderance of the evidence standard. *E.g.*, *United States v. Duarte*, 950 F.2d 1255, 1263 (7th Cir.1991); *United States v. Reyes*, 930 F.2d 310, 315 (3d Cir.1991); *United States v. Townley*, 929 F.2d 365, 369 (8th Cir.1991); *United States v. Walton*, 908 F.2d 1289, 1301 (6th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990); *United States v. Robison*, 904 F.2d 365, 371 (6th Cir.1990); *see also United States v. Murphy*, 899 F.2d 714, 718 (8th Cir.1990) (factual determinations at sentencing need not be proved beyond a reasonable doubt). The jury determines guilt, not quantity. *United States v. Wood*, 834 F.2d 1382, 1388–90 (8th Cir. 1987). Quantity, which is not an element of the offense under section 841(b)(1)(A), is an issue for the sentencing judge. *Id.* Thus, for the purpose of establishing the mandatory minimum sentence and the base offense level under the Guidelines, the government bears the burden of proving drug quantity by a preponderance of the evidence. *E.g.*, *United States v. Prescott*, 920 F.2d 139, 144 (2d Cir.1990); *United States v. Goff*, 907 F.2d 1441, 1444 (4th Cir.1990); *United States v. Reid*, 911 F.2d 1456, 1462 (10th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991); *see also United States v. Streeter*, 907 F.2d 781, 792 (8th Cir.1990) (government must prove contested factual allegations in the PSR by a preponderance of the evidence).

In order to determine the appropriate offense level, the district court must consider "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2); *see also United States v. Lawrence*, 915 F.2d 402, 406 (8th Cir.1990) (same). Drug quantities not specified in the count of conviction may be considered by the sentencing court in determining the offense level if they are part of the same course of conduct or scheme as the count of conviction. U.S.S.G. § 2D1.1, comment. (n.12) (citing U.S.S.G. § 1B1.3(a)(2)); *see also Lawrence*, 915 F.2d at 406 (same); *Streeter*, 907 F.2d

at 791 (same). When, as here, there is no drug seizure, it is difficult for courts to determine the amount of cocaine properly attributed to each defendant in the conspiracy. *Walton*, 908 F.2d at 1301. The Guidelines provide:

> Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance. In making this determination, the judge may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.

U.S.S.G. § 2D1.4, comment. (n. 2).

Before sentencing, the defendant may challenge the accuracy of the factual allegations in the PSR. *See* Fed.R.Crim.P. 32(c)(3)(D); *see also* U.S.S.G. § 6A1.3(b), p.s. ("The court shall resolve disputed sentencing factors in accordance with [Fed. R.Crim.P.] 32(a)(1) ..., notify the parties of its tentative findings and provide a reasonable opportunity for the submission of oral or written objections before imposition of sentence."). When a defendant alleges any factual inaccuracy in the PSR:

> the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons.

Fed.R.Crim.P. 32(c)(3)(D).

If, in response to a sufficiently specific objection by the defendant, the court elects to make a finding on the disputed factual issue, "the government must introduce evidence sufficient to convince the Court by a preponderance of the evidence that the fact in question exists." *Streeter*, 907 F.2d at 792. Support for this principle resides in the Guidelines as well, which provide:

> When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any reasonable dispute concerning a factor important to the sentencing determination, *the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.*

U.S.S.G. § 6A1.3(a), p.s. (emphasis added).

■ The sentencing judge may conduct an evidentiary hearing on the quantity of drugs at issue; but such a hearing is discretionary, not mandatory. *United States v. Upshaw*, 918 F.2d 789, 791 (9th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1335, 113 L.Ed.2d 266 (1991). As the commentary to U.S.S.G. § 6A1.3 cautions, however:

> Although lengthy sentencing hearings should seldom be necessary, disputes about sentencing factors must be resolved with care. When a reasonable dispute exists about any factor important to the sentencing determination, the court must insure that the parties have an adequate opportunity to present relevant information. Written statements of counsel or affidavits of witnesses may be adequate under many circumstances. An evidentiary hearing may sometimes be the only reliable way to resolve disputed issues.... The sentencing court must determine the appropriate procedure in light of the nature of the dispute, its relevance to the sentencing determination, and applicable case law.

U.S.S.G. § 6A1.3, comment.

This court is currently reconsidering whether the sentencing court remains bound by the confrontation clause. *United States v. Wise*, 923 F.2d 86, 87 (8th Cir. 1991) (per curiam), *reh'g granted*, 1991 WL 665 (March 15, 1991). Even if the confrontation clause does not apply at sentencing, however, we assume that the evidence used for determining a base offense level must still be " 'reasonably trustworthy.' " *Wise*,

923 F.2d at 87 (J.R. Gibson, J., dissenting) (quoting *United States v. Kikumura*, 918 F.2d 1084, 1103 & n. 19 (3d Cir.1990)); *see also* U.S.S.G. § 6A1.3(a), p.s.

We belabor these points for one simple reason. Drug quantity is a critical calculation under the Guidelines. *United States v. Rigsby*, 943 F.2d 631, 643 (6th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1269, 117 L.Ed.2d 496 (1992). In most instances, the amount and type of drug at issue determine the length of a particular defendant's sentence. *See Duarte*, 950 F.2d at 1262 (in cocaine conspiracy and possession case, the base offense level depends upon the quantity of cocaine at issue in the crime); *United States v. Wise*, 881 F.2d 970, 971 (11th Cir.1989).[12] Drug quantity determinations also control which statutory mandatory minimum and maximum sentences apply in a given case. *See generally* 21 U.S.C. § 841(b) (1988); *see also Rigsby*, 943 F.2d at 643 (noting that drug quantity under section 841 affects mandatory minimum sentences).

■■■ As with all factual findings under the Guidelines, *see* 18 U.S.C. § 3742(e)(4) (1988), we review a district court's determination of drug quantity for clear error. *Lawrence*, 915 F.2d at 406 (citing *United States v. Murphy*, 899 F.2d 714, 717 (8th Cir.1990)); *United States v. Phillippi*, 911 F.2d 149, 151 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 702, 112 L.Ed.2d 691 (1991). A defendant who challenges the sentencing court's drug quantity determination naturally faces "a difficult burden" on appeal. *Walton*, 908 F.2d at 1300. We reverse only if the entire record

leaves us with " 'the definite and firm conviction that a mistake has been committed.' " *Lawrence*, 915 F.2d at 408 (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)) (internal quotation omitted). We conclude that this is such a case.

The original PSR prepared for Bowers stated that "[i]nformation was developed at trial through witness testimony that Bowers' [sic] organization distributed at least 491.91 grams of crack cocaine during the period of the instant Indictment."[13] Presentence Report Prepared for Charles H. Bowers at 2 [hereinafter Bowers's PSR]. Bowers and his attorney objected to the PSR in writing on the ground that the Government had failed to prove the alleged drug quantity. Bowers's attorney requested an informal conference with the probation officer to discuss the origin and computation of the 491.91 gram figure. Letter Objecting to Bowers's PSR at 2 (Nov. 13, 1990). The Government responded that the PSR "accurately reflects the compilation of trial and grand jury testimony and witness interviews." Government's Letter Responding to Bowers's PSR at 1 (Dec. 14, 1990). As to the defendant's request for a conference, the Assistant U.S. Attorney requested to participate "as agreements at such conferences save considerable court time." *Id.*[14]

The probation officer responded to the objections by citing a post-sentencing interview in which Simmons told IRS Agent Steven Hart about his activities with Bowers.[15] The probation officer claimed that

---

**12.** As in *Wise*, we do not deal here with the fixed base offense levels of 38 or 43 for drug offenses in which use of the substance results in death or serious bodily injury. *See United States v. Wise*, 881 F.2d 970, 971 n. 4 (11th Cir.1989) (citing U.S.S.G. § 2D1.1(a)(1), (2)).

**13.** The probation officer assigned Bowers a base offense level of 34, with a one-level enhancement for distribution on university property. *Id.* at 3. The PSR also recommended a four-level adjustment for exercising a leadership role in the offense. *Id.* at 4 (citing U.S.S.G. § 3B1.1(a)). The total offense level assigned to Bowers was 39. With a criminal history category of I, the imprisonment range for Bowers under the Guidelines was 262 to 327 months (21

5/6 to 27 1/4 years). *Id.* at 5. A ten year statutory minimum applied to the conspiracy count under 21 U.S.C. § 841(b)(1)(A). *Id.*

**14.** We cannot discern from the record whether such a conference was ever held.

**15.** During the February 11, 1991 interview, Simmons stated that he went with Bowers to Florida four times. All the cocaine they obtained in Florida was in powder form (except the small amount of crack which they brought back as a favor to someone and which Trooper Hinesley discovered in the trunk of the rental car). On the first two trips, they obtained between two and three ounces of cocaine powder. On the

the district court could now attribute forty-five ounces (1282 grams) of cocaine powder and cocaine base to Bowers. Addendum to Bowers's PSR at 1 (Feb. 19, 1991). The probation officer recommended a revised base offense level of 36, with a total offense level of 41.[16] *Id.* On the basis of Simmons's interview, the Government also requested a base offense level of 36 and an upward adjustment for obstruction of justice. Government's Suggestions Concerning Sentencing at 1 (Feb. 19, 1991). The probation officer then recommended that the district court grant the obstruction adjustment for a total offense level of 43, which mandates a life sentence. Second Addendum to Bowers's PSR at 1 (Feb. 20, 1991).

At Bowers's sentencing hearing, Simmons testified that he had correctly imputed forty-five ounces of "controlled substance" to Bowers. II Sentencing Tr. at 50. Simmons also stated that he had correctly indicated in the interview with Agent Hart that several individuals distributed and worked for Bowers. *Id.* Simmons conceded on cross that he had not testified truthfully at trial. *Id.* at 53–55. Simmons also acknowledged that he could not give any dates for the Springfield, Kansas City and Florida transactions in which he claimed to have seen Bowers with forty-five ounces of cocaine powder and cocaine base. *Id.* at 57–58.

Bowers's attorney addressed, at some length, the accuracy of the drug quantity determination in the PSR. *Id.* at 63–68. He specifically asked the district court not to consider Grenda Pierce's testimony for sentencing purposes because she was less than honest at trial about whether she had been the subject of drug testing during her probation. *Id.* at 65. He requested that the district court not consider the statements of Simmons, who had testified untruthfully at trial. *Id.* at 66–68. He asked the district court not to rely upon the testimony of Phillip McCall, the co-defendant who pled guilty and testified at trial, or the physical evidence seized during the allegedly unlawful automobile search in Poplar Bluff. *Id.* Bowers's attorney argued to the district court, as he asserts on appeal, that the reliable evidence yielded a drug quantity of less than fifty grams. *Id.* at 68.

The Government asked the district court to make a factual finding and sentence Bowers at the offense level for 500 to 515 grams of cocaine base. *Id.* at 72. The district court, however, flatly rejected the testimony Simmons gave during the sentencing phase.[17] *Id.* at 74. The district court did not expressly address Bowers's other objections, including the use of Pierce's testimony for sentencing. Rather, the district court stated that it "accept[ed] the facts as set forth in the original presentence report." *Id.*

Based on a total offense level of 39, the district court sentenced Bowers to three concurrent 262 month (21⅚ year) sentences on Counts I, IV and V. Bowers received two concurrent 240 month (20 year) sentences on Counts III and VI. The district court imposed a $250 special assessment and a six year period of supervised release.

Ordinarily, we would defer to the factual findings of the district court, which had the

---

third and fourth trips, they obtained a quarter kilo (nine ounces) of cocaine powder. Simmons also stated that Bowers went to Florida alone on four occasions. Simmons estimated that Bowers brought back four to five ounces of cocaine powder on each of these trips. Simmons indicated that they went to Kansas City to obtain cocaine base on about four occasions. On the first trip, they brought back three ounces of crack. On the remaining two to three trips, they brought back two ounces of crack.

16. The probation officer recognized that some of the 1282 gram quantity from the Simmons interview was cocaine powder. Yet, he recommended a revised base offense level of 36, presumably as if the entire 1282 gram quantity were cocaine base.

17. The district judge stated:

The government's burden concerning this sentencing and facts to enhance the sentencing is by the preponderance of the evidence, and I'm just not going to accept the testimony of a confessed perjurer to enhance a sentence from a minimal [sic] to 262 months to life. I'm just not going to do it.

I'm not going to accept that testimony as true.

II Sentencing Tr. at 74.

opportunity to observe the witnesses at trial and evaluate their credibility. *See* 18 U.S.C. § 3742(e)(4). The problem we confront on this appeal, however, is that the factual findings below leave us scant room to evaluate whether, as Bowers claims, the district court arrived at his base offense level by using unreliable evidence. *See United States v. Michael,* 894 F.2d 1457, 1459–60 (5th Cir.1990) (clearly erroneous factfinding where district court in no way identifies the source or nature of the " 'information' " upon which it relies, reviewing court has no way to evaluate whether the information had sufficient indicia of reliability) (footnote omitted).

We note two additional aspects of this case which complicate our task on appeal. The district court failed to state that it would not take the controverted allegations, including Pierce's statements, into account at sentencing. *See* Fed.R.Crim.P. 32(c)(3)(D). Nor did the district court attach its findings and determinations to the PSR as required by Rule 32. The latter deficiency alone requires that we remand for compliance with the rule. *E.g., United States v. Brown,* 946 F.2d 58, 60 (8th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 976, 117 L.Ed.2d 140 (1992); *United States v. Santana–Camacho,* 931 F.2d 966, 968– 70 (1st Cir.1991); *United States v. Jiminez,* 928 F.2d 356, 365 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 164, 116 L.Ed.2d 129 (1991); *United States v. Kerr,* 876 F.2d 1440, 1445 (9th Cir.1989).

We are left with the vague statement in the original PSR that "[i]nformation was developed at trial through *witness testimony* that Bowers' organization distributed at least 491.91 grams of crack cocaine." Bowers's PSR at 2 (emphasis added). After Bowers objected to the drug quantity determination in the PSR, the probation officer noted that he "utilized information developed at trial and from review of *witness interviews* to arrive at the amount of drug [sic] involved in the instant conspiracy." Addendum to Bowers's PSR

at 2 (emphasis added). Nowhere does the PSR or the district court indicate, however, whose interviews or testimony figured into the 491.91 gram determination. *See United ed States v. Shacklett,* 921 F.2d 580, 584 (5th Cir.1991) (clear error for district court to sentence defendant on the basis of PSR which did not refer to the source of its facts and information).

As for "information developed at trial through witness testimony," the testimonial and physical evidence at trial fell far short of the 491.91 gram figure derived by the probation officer. The Government introduced as exhibits at trial a total of 39.42 grams of cocaine base.[18] Expert testimony established the weight of each respective exhibit.

The testimonial evidence included Grenda Pierce, who testified that she bought between one-tenth and one gram of cocaine base from Charles Bowers on more than twenty occasions. II Trial Tr. at 325–26. Her trial testimony, if reliable, properly could have imputed to Bowers between two and twenty grams of cocaine base. *See United States v. Duckworth,* 945 F.2d 1052, 1054 (8th Cir.1991) (sentencing court may sentence according to its estimation of the quantity of drugs at issue on the basis of trial testimony). For reasons we discuss below, however, Pierce's testimony lacks the requisite indicia of reliability to serve as the basis of a drug quantity estimate.

Phillip McCall testified that he sold approximately one half ounce (about fourteen grams) of cocaine base per day for Charles Bowers from June 1989 until his arrest on September 29, 1989. I Trial Tr. at 36–47. The jury acquitted Bowers on Count II, the charge about which McCall testified. As we indicate below, we have no basis for evaluating whether the district court relied on McCall's testimony to calculate the drug quantity.

As for "witness interviews," we are aware of only one interview which was available to the probation officer when he prepared the original PSR for Bowers on

---

**18.** The Government introduced as physical evidence at trial 5.5 grams on Count II, .18 grams on Count III, 2.35 grams on Count IV, 29.60 grams on Count V and 1.79 grams on Count VI. By adding all the physical evidence together, we find a total of 39.42 grams.

October 31, 1990. During this interview, Grenda Pierce told IRS Agent Steven Hart that she purchased approximately five grams of crack from Charles Bowers or his associates on a minimum of three to four nights a week for a six month period. By simple arithmetic, Pierce's interview statement yields between 360 and 520 grams of cocaine base.[19]

Pierce, however, proved an inherently unreliable witness at trial. As counsel for Bowers reminded the district court at the sentencing phase, Pierce lied when she testified that she had not been subject to drug testing during her state probation. As the pre-trial urinalysis revealed to the district court after the conclusion of the trial, Pierce likewise testified falsely when she stated that she no longer used drugs.

Pierce admitted, moreover, that her drug use caused memory impairment while she was using crack. II Trial Tr. at 400. Her testimony bore this out. Pierce initially testified that she could not remember the frequency with which she purchased cocaine base from Charles Bowers. *Id.* at 325. When questioned a second time, she responded, "I really can't give you a number. It was a lot of times.... Over 20, I know." *Id.* When asked how often she purchased crack from Simmons, she replied, "It was a large amount of times. I could not give you a number to—of the amount of times, but it was a large number of times. It was just whoever—They all ran together, and they took turns, it seemed like." *Id.* at 328. Pierce's statements, marred by memory impairment from a history of cocaine addiction and

further called into question by her untruthful testimony at trial, lack "sufficient indicia of reliability" as contemplated by U.S.S.G. § 6A1.3 to resolve the disputed issue of drug quantity at Bowers's sentencing hearing.

We hold, therefore, that Pierce's interview and testimony lack sufficient *indicia* of reliability to serve as a basis for calculating the quantity of cocaine base that properly could have been attributed to Bowers. *See* U.S.S.G. § 6A1.3(a), p.s.; *see also United States v. Cammisano,* 917 F.2d 1057 (8th Cir.1991) (hearsay statements of confidential informants not sufficiently reliable to support conclusion that defendant was connected to organized crime); *United States v. Robison,* 904 F.2d 365, 371–72 (6th Cir.) (testimony of heavy drug user with "hazy" memory not sufficiently accurate to permit the district court to aggregate a specific quantity of cocaine in determining the base offense level), *cert. denied,* —— U.S. ——, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990). To the extent that the district court's drug quantity determination rested upon information provided by Pierce, we also hold that the district court's findings of fact are clearly erroneous. *See United States v. Shacklett,* 921 F.2d 580, 584 (5th Cir.1991); *Robison,* 904 F.2d at 372. Because our review of the record reveals that the conclusory, ambiguous statement of drug quantity in the original PSR used Pierce's inherently unreliable statements to calculate the 491.91 gram figure, we must remand to the district court for further factual findings. Consequently, we vacate Bowers's sentence and

---

**19.** The second interview of which we are aware took place between Simmons and Hart on February 11, 1991. Bowers alleged at sentencing that the district court should not credit the testimony of Simmons, who testified untruthfully at trial. The district court agreed. We are not inclined to question the district court's credibility determination. *See, e.g., United States v. Galvan,* 953 F.2d 1098, 1101 (8th Cir.1992) (citing *Anderson v. City of Bessemer,* 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985)) (district court credibility determinations demand great deference); *see also* 18 U.S.C. § 3742(e).

It is unlikely, however, that Simmons's post-sentencing interview or testimony actually af-

fected the determination of Bowers's base offense level. The district court accepted the facts as set forth in the original PSR. The probation officer prepared the original PSR for Bowers on October 31, 1990, several months before Simmons recanted. Therefore, the only witness interview available to the probation officer when he prepared the original PSR was Pierce's statement to Agent Hart. The original PSR for Bowers thus relied to some degree upon Pierce's interview to yield the 491.91 gram figure. We discern no other interview in the record for deriving the drug quantity calculated by the probation officer.

remand to the district court for the limited purpose of conducting a sentencing hearing, making a factual determination as to the quantity of cocaine base properly attributable to the conspiracy, and resentencing Bowers. *See United States v. Christopher,* 923 F.2d 1545, 1557 (11th Cir.1991).

Because we summarily affirm the validity of the consensual automobile search by Corporal Hinesley, we reject Bowers's contention that the district court improperly used the physical evidence from this search to determine the drug quantity. Even if we were able to discern that the district court relied on the cocaine base seized by Corporal Hinesley, we would not reverse for clear error.

As for Bowers's claim that the district court should not have credited the testimony of Phillip McCall, we again have no basis for determining whether McCall's testimony figured into the drug quantity determination. Even if it did, we would likely defer to the credibility determination of the district court, who observed McCall at trial.

■ Finally, we reject Bowers's remaining argument that the district court erred by granting an upward adjustment for his leadership role in the conspiracy. *See* U.S.S.G. § 3B1.1(a). This court defines "leadership role" for the purpose of this enhancement quite broadly. *United States v. Yerks,* 918 F.2d 1371, 1375 (8th Cir.1990). We review only for clear error. *Duckworth,* 945 F.2d at 1054. The evidence before the district court indicated that Bowers served as the leader of James Simmons, Phillip McCall, Craig Bowers and several non-testifying, unindicted subdistributors. The district court did not clearly err by adjusting Bowers's sentence to reflect his leadership role.

The Government contends that even if the district court erred in calculating the drug quantity at issue, we should not remand because Bowers would receive the same sentence or guideline range under different evidence. We cannot agree. We have already indicated that, aside from the unreliable testimony of Grenda Pierce, we cannot discern which evidence served as the basis of the district court's drug quanti-

ty determination. From review of the record as a whole, we cannot say that the district court would have imposed the same sentence upon Bowers under different evidence; nor can we conclude that the erroneous reliance upon Pierce's unreliable testimony was harmless. *Cf. Williams v. United States,* — U.S. ——, 112 S.Ct. 1112, 1120–21, 117 L.Ed.2d 341 (1992) (when district court misapplies the Guidelines, a remand is required unless the reviewing court concludes, on the basis of the record as a whole, that the error was harmless); *United States v. Kloor,* 961 F.2d 1393, 1394–95 (8th Cir.1992) (per curiam) (issue is reviewable where record as a whole provides no certainty that the district court would have imposed the same sentence had it granted the contested adjustment). The drug quantity determination, moreover, implicates credibility determinations which we are uniquely unqualified to make. We thus reject the Government's argument that a remand is unnecessary.

■ We do not vacate Simmons's sentence. Unlike Bowers, Simmons failed to challenge the district court's drug quantity determination on appeal. As a general rule, an appellate court may review only the issues specifically raised and argued in an appellant's brief. *United States v. Olano,* 934 F.2d 1425, 1439 (9th Cir.1991) (citation omitted). Issues not raised on appeal are waived under Rule 4 of the Federal Rules of Appellate Procedure, which requires the inclusion of a statement of issues in the appellate brief. *Gramegna v. Johnson,* 846 F.2d 675 (11th Cir.1988) (Henley, J., sitting by designation). Accordingly, we affirm Simmons's sentence.

We do not reach the question of whether the district court should have adjusted Simmons's sentence for obstruction of justice. *See* U.S.S.G. § 3C1.1, comment. (n. 3(b)). The Government has not raised this issue on appeal. Therefore, the obstruction issue is not properly before us. *See United States v. Turner,* 898 F.2d 705, 711 (9th Cir.) (government waived sentencing issue by failure to contest it on appeal) (citing 18

U.S.C. § 3742(b)), *cert. denied*, 495 U.S. 962, 110 S.Ct. 2574, 109 L.Ed.2d 756 (1990).

In sum, to the extent that the district court's drug quantity determination of 491.91 grams rested on the inherently unreliable statements of Grenda Pierce, we conclude that the district court's factual findings are clearly erroneous. We vacate the sentence and remand for resentencing in accordance with this opinion. On remand, the district court's factual findings should rest on reliable evidence as to the amount of cocaine base attributable to Bowers. The district court should attach a copy of its findings to the PSR after it resentences the defendant.

## III. CONCLUSION

We add a comment.

This case and other drug convictions like it demonstrate that, under the Sentencing Guidelines, district judges are obligated to sentence first-time drug offenders to extremely long prison terms under evidence which is often haphazardly produced and considered without regard to traditional rules of evidence. The guidelines procedure has chosen to bypass adherence to rules of evidence which have developed over hundreds of years in the common law tradition to assure reliability in factfinding. The guidelines require, however, that a sentence must be the product of evidence which meets a minimum threshold of reliability. The traditional notions of fair play which have heretofore been associated with the procedures in the courts of this country require nothing less.

We affirm Simmons's conviction and sentence. We affirm Charles Bowers's conviction but vacate his sentence and remand for resentencing in accordance with this opinion.