19 F.3d 24
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that no party may cite an opinion not intended for publication unless the cases are related by identity between the parties or the causes of action.
UNITED STATES of America, Appellee,
v.
Thomas J. ERGER, Appellant.
 No. 93-3182.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: February 9, 1994.
Filed: February 18, 1994.
 
 Before FAGG. WOLLMAN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Thomas J. Erger appeals the sentence imposed by the district court[1] after Erger pleaded guilty to conspiracy to manufacture and distribute marijuana. We affirm.
 
 
 2
 In February 1993, the United States charged, in a one count information, that between 1991 and May 1992 Erger knowingly and unlawfully conspired with others to manufacture 50 or more marijuana plants and to distribute 50 kilograms or more of marijuana, in violation of 21 U.S.C. Secs. 841(b)(1)(C) and 846. Erger waived indictment and pleaded guilty "to the elements of the charge in Count 1," not the amounts of marijuana involved.
 
 
 3
 The presentence report (PSR) indicated a base offense level of 26 (distribution of between 100 and 400 kilograms of marijuana), and recommended a two-level enhancement pursuant to U.S.S.G. Sec. 2D1.1(b)(1) for possession of a dangerous weapon, and a three-level reduction for acceptance of responsibility, resulting in a total offense level of 25. With a criminal history category of I, the Guidelines range was 57 to 71 months. Both parties filed objections.
 
 
 4
 At sentencing, Special Agent Alan Steil testified that he counted 32 marijuana plants (15 in small pots and 17 in large pots) in Erger's home, and that he identified the plants by their characteristics. He also testified that he had attended several "drug identification schools" and that he sent 5 plants to the lab for analysis. On cross-examination, Erger attacked Steil's identification of 9 of the 15 plants in the small pots, contending that Steil counted blades of grass and weeds as marijuana plants. Steil could not identify the disputed plants as marijuana using only the pictures the government had introduced as evidence but he stated that he positively identified the plants as marijuana when they were seized. According to Erger's counsel, the disputed plants should not have been counted against Erger because they were not identifiable in the pictures and the government failed to test them.
 
 
 5
 Yusef Igram, a marijuana distributor who agreed to cooperate with the government in exchange for a reduced sentence, testified that he helped Erger acquire gardening supplies for growing the marijuana plants, and start between 20 and 30 marijuana plants. Igram testified that he saw another 20 to 40 plants on another occasion, and that Erger had other individuals growing marijuana for him. Igram also testified that he made five trips to the West Coast to purchase approximately 200 pounds of marijuana. On the first trip, Igram acquired 19.75 pounds of marijuana; all of which was weighed by Erger and Erger kept at least 18 pounds to distribute. On the second trip, Igram acquired between 48 and 50 pounds: 15 to 20 pounds of which was given to Erger but he returned it because Erger "only wanted a higher grade of marijuana." On the third trip, Igram acquired 48 pounds of marijuana, of which at least 20 pounds was delivered to Erger. On the fourth trip, Igram acquired "close to 50 pounds," of which he gave 5 to 10 pounds to Erger. On the final trip, Igram acquired between 60 and 75 pounds, of which Erger took 15 pounds.
 
 
 6
 Officer Kent Choate testified that Erger told him that "he started approximately 50 plants ... in 1991," but officers could only account for 26 or 27 plants. Choate also testified that Erger also named 16-17 individuals to whom he had sold drugs.
 
 
 7
 Erger testified that he had 16 to 17 customers; that he grew approximately 50 plants in 1991 and 1992; and that he grew 26 plants in 1991 (15 planted by the railroad track and stolen, 6 planted by the railroad tracks and harvested by him, and 5 plants given to a friend). Erger also testified that there were only 6 marijuana plants growing in the small pots, and that the other plants being counted as marijuana were either weeds or grass because he "did not use sterile soil."
 
 
 8
 The court found that the testimony that Erger was responsible for at least 50 plants more credible; that the government proved by a preponderance of the evidence that Erger grew a minimum of 50 plants; and that, figuring conservatively, Erger was responsible for at least 69 pounds of marijuana imported by Igram. As a result, the court concluded that Erger was responsible for 113 kilograms of marijuana ("50 kilos from 1991, 32 from 1992, and 30.13 from ... Igram"). The court granted Erger a three-level reduction for acceptance of responsibility, and sentenced Erger to 57 months imprisonment (the bottom of the applicable Guidelines range), to be followed by a three-year term of supervised release. The court also ordered Erger to pay the $50 special assessment and net restitution without interest in the amount of $2,895.
 
 
 9
 Erger now argues that the court's finding that the government seized 32 marijuana plants was erroneous because it was not "based on evidence with a sufficient indicia of reliability"; that the court's finding that he grew 50 plants in 1991 was clearly erroneous because the government proved by a preponderance of the evidence that he grew 26 marijuana plants; and that the court's finding that Erger purchased over 30 kilograms of marijuana from Igram was clearly erroneous because Erger "purchased no more than 14.63 kilograms." Finally, based on United States v. Blume, 967 F.2d 45 (2d Cir. 1992), Erger argues that he district court erred as a matter of law by equating each 1991 marijuana plant with one kilogram of marijuana because the one kilo to one plant equation applies only to live plants and the court should have estimated the actual weight of the 1991 plants.
 
 
 10
 This court reviews a district court's drug quantity determination for clear error, see United States v. Clark, 980 F.2d 1143, 1147 (8th Cir. 1992) (per curiam), and "[w]here there are two permissible views of the evidence, the [district court's] choice between them can not be clearly erroneous."[2] Anderson v. City of Bessemeir City, 470 U.S. 564, 574 (1985). The government does, however, have the burden to establish by a preponderance of the evidence, using reliable evidence, the number of marijuana plants manufactured by Erger. See United States v. Malbrough, 922 F.2d 458, 464 (8th Cir. 1990), cert. denied, 111 S. Ct. 2907 (1991). Reliable evidence for determining drug quantity is that which is "reasonably trustworthy," United States v. Simmons, 964 F.2d 763, 772 (8th Cir.), cert. denied, 113 S. Ct. 632 (1992); and evidence is reasonably trustworthy if it has a "sufficient indicia of reliability." Id. at 776.
 
 
 11
 It is well established in the Eighth Circuit that a marijuana plant does not have to be a mature viable plant in order to be counted for sentencing purposes. See, e.g., United States v. Curtis, 965 F.2d 610, 616 (8th Cir. 1992); United States v. Bechtol, 939 F.2d 603, 605 (8th Cir. 1991). Agent Steil testified that he identified and seized 32 plants, 5 of which were tested. As a result, the district court's finding that 32 marijuana plants were seized from Erger's residence was not clearly erroneous. Cf. Clark, 980 F.2d at 1147 (quantity determination not clearly erroneous when "based on videotapes of the growing marijuana and the testimony of deputies who had counted the marijuana plants").
 
 
 12
 We also conclude the district court's finding that Erger grew at least 50 marijuana plants in 1991 was not clearly erroneous. Erger told agents during the investigation that he planted approximately 50 plants and that he planted in "waves." Agents could readily account for at least 27 of the 50 plants, and Igram testified that he personally planted between 20 and 30 plants with Erger and he saw another 20 to 40 plants on another occasion.
 
 
 13
 Likewise, we conclude the district court's finding that Erger was responsible for at least 69 pounds (30.13 kilogram) of marijuana delivered by Igram was also not clearly erroneous. Erger admitted to participating in a conspiracy to grow and distribute marijuana. Igram testified that he delivered approximately 73 pounds of marijuana to Erger. Although Erger and Igram gave conflicting testimony about the amount of marijuana Erger received, the district court did not clearly err in crediting Igram's testimony. See United States v. Graham, 982 F.2d 315, 316 (8th Cir. 1992) (per curiam).
 
 
 14
 Finally, we review for plain error Erger's argument that the section 2D1.1(c) ratios do not apply to his 1991 crop because he raised it for the first time on appeal. Nevertheless, we conclude that plain error does not exist because: (1) use of the one kilogram to one plant ratio was not obvious error; and (2) the error did not "seriously affect the fairness, integrity or public reputation of judicial proceedings" such that it resulted in a "miscarriage of justice." United States v. Olano, 113 S. Ct. 1770, 1777-79 (1993); United States v. Montanye, 996 F.2d 190, 192-93 (8th Cir. 1993) (en banc).
 
 
 15
 Accordingly, the sentence imposed by the district court is affirmed.
 
 
 
 [1]
 The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa
 
 
 [2]
 "A defendant who challenges the sentencing court's drug quantity determination naturally faces 'a difficult burden' on appeal" because "[w]e reverse only if the entire record leaves us with 'the definite and firm conviction that a mistake has been committed.' " Simmons, 964 F.2d at 773 (quoted cases omitted)